## FEDERAL TRADE COMMISSION ET AL. *v.* CLAIRE FURNACE COMPANY ET AL.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 1. Argued December 6, 1923; reargued November 24, 1925.— Decided April 18, 1927.

1. An order of the Federal Trade Commission requiring a corporation to submit reports concerning its business, under § 6 of the Federal Trade Commission Act, is enforcible by the Commission only by requesting the Attorney General to institute mandamus proceedings under § 9, or by supplying him with the facts necessary to enforce the forfeiture of $100 per day, prescribed by § 10 for continued failure to file such reports after notice. P. 170.

2. As the validity of such orders may be fully contested in such mandamus or forfeiture proceedings, if instituted in the exercise of his discretion by the Attorney General, these offer an adequate legal remedy to corporations resisting the orders as unconstitutional, and therefore a bill in equity to enjoin the Commission from taking steps to enforce such orders will not lie. P. 174.

3. In view of the purpose of the statute that questions of constitutionality involved in such orders of the Commission should be passed upon by the Attorney General before undertaking their enforcement by judicial proceedings instituted by him, a suit brought by corporations affected, against the Commission, to determine such questions should not be entertained even with consent of the parties. P. 174.

52 App. D. C. 202; 285 Fed. 936, reversed.

APPEAL from a decree of the Court of Appeals of the District of Columbia which affirmed a decree of the Supreme Court of the District, enjoining the Federal Trade Commission and its members from attempting to enforce orders made on the complainant corporations, commanding them to furnish monthly reports showing in detail the output, costs, prices, etc., in their business.

*Solicitor General Beck,* with whom *Messrs. W. H. Fuller* and *Adrien F. Busick* were on the brief, for appellants on the first argument.

Congress has power to compel the giving of information and production of documents in any inquiry concerning a subject matter over which it has jurisdiction to legislate. The Constitution conferred all powers proper for the exercise of each power expressly granted. Among the powers so granted is that to acquire information, and it is not necessary to establish in each instance that the information required is indispensable to legislative action. The specific character of the action contemplated by Congress need not be shown in order that information may be required. Information respecting prices may be required though no power to fix reasonable prices exists. Information required should be had at least as to articles of prime necessity.

Congress can constitutionally authorize an administrative body to collect information respecting any subject over which it has legislative jurisdiction.

Jurisdiction of Congress over interstate commerce and the extent of the power to require information: Commerce among the States includes the purchase and sale of commodities between citizens in different States. The power to regulate extends to all matters which may burden or restrain interstate commerce, even though not actually a part thereof. The power of Congress to require information respecting interstate commerce is broader than the power to regulate, and extends to ascertaining what, if any, burdens or restraints upon such commerce are threatened.

The information called for by the questionnaires concerns interstate commerce itself, or matters so closely related thereto as to be necessary to an intelligent report upon conditions existing in such commerce, and may be lawfully required. The information is necessary to show whether the law of supply and demand operates. Each item required relates to subject matter upon which Congress may legislate.

Congress has the power to provide for the investigation of corporations and the compulsory making of reports by them, and for the publication of the facts for the purpose of applying the corrective force of public opinion to the practices of corporations. It has power to compel the giving of information and production of documents to show whether the laws which the Commission is charged with enforcing are being violated, and demand therefor falls within the visitorial power of Congress over corporations engaged in interstate commerce.

The Federal Trade Commission Act authorized the Commission to require the information and reports specified in the questionnaires. The Commission's action was within the text of the law; it was in harmony with the long interpretation of this and other Acts by the Government, and with the Congressional interpretation of the Trade Commission Act. The call for monthly reports was lawful.

The demand for the information contained in the questionnaires in the manner and form made, does not violate the Fourth or Fifth Amendments to the Federal Constitution.

*Solicitor General Mitchell,* with whom *Messrs. W. H. Fuller* and *Adrien F. Busick* were on a supplemental brief, for appellants on reargument.

Obtaining information about their interstate business from corporations engaged in interstate commerce is an appropriate means of enabling Congress to regulate interstate commerce.

The power to require such corporations to furnish information concerning their affairs can not be denied unless there be some specific provision of the Constitution restraining its exercise.

The ultimate question in this case is whether the power is restrained by the Fourth Amendment, prohibiting unreasonable searches and seizures. It is not an unreason-

able invasion of privacy to require from these corporations reports of their interstate business, although the information is not for use in any pending proceeding or in connection with pending legislation.

Having power to require information respecting their interstate commerce business, Congress has power to require information respecting the business of these corporations not interstate commerce, where (1) the accounts are commingled or (2) their other operations have a direct bearing on their activities in interstate commerce.

The Commission is given power by the terms of the Federal Trade Commission Act to require reports in the form demanded.

*Mr. Paul D. Cravath,* with whom *Mr. Hoyt A. Moore* was on the brief, for appellees on the first argument.

Congress has not conferred upon the Commission any such power as it seeks to exercise in requiring the information called for. The sole source of authority of the Commission is the Federal Trade Commission Act, which does not purpose to authorize the Commission to make a general investigation of an industry or intrastate business in any case. The construction by the Commission calls for unprecedented and unauthorized power.

The orders of the Commission to the appellees exceed the power granted to it. The Act applies only to the interstate commerce of corporations. The Commission can not regulate prices. Investigations authorized must relate to the purposes of the Act. The Act does not authorize investigations of economic conditions.

Congress could not grant to the Commission power to investigate the manufacturing activities of corporations which sell their output in interstate commerce. The power of Congress over interstate commerce does not extend to manufacturing or mining. Although the Commission may have investigatory power over such business

of the appellees as is interstate commerce, this does not give it such power over their other business. Neither Congress nor the Commission has any power to require information on any matter over which it has no regulatory power. The inquiry of the Commission does not relate to interstate commerce.

Enforcement of the demands of the Commission would violate rights secured to the appellees by the Fourth Amendment to the Constitution.

*Mr. Paul D. Cravath,* with whom *Messrs. Hoyt A. Moore* and *A. Arthur Jenkins* were on a supplemental brief, for appellees on reargument.

This case presents squarely the question whether the Commission has power to require corporations engaged in the manufacture of steel and iron products or in the production of coke to file with the Commission monthly reports giving the costs and sales prices of products manufactured by them and a vast amount of other information regarding their manufacturing operations and purely intrastate activities, simply because a part of their manufactured products is sold, and a part of the raw materials utilized at their plants is purchased, in States other than those in which those plants are located. Two or three of the appellees apparently do not purchase any of their raw materials or sell any of their manufactured products in interstate commerce. All the others sell some portion of their manufactured products, and most of them purchase or produce some portion of their raw materials, in States other than the States where their respective manufacturing plants are located.

Whatever authority the Commission had for requiring the information must be found in the Act.

The law laid down by this Court in *Federal Trade Commission* v. *American Tobacco Co.,* 264 U. S. 298, and *Federal Trade Commission* v. *Baltimore Grain Co.,* 267

U. S. 586, applies to the present case. The only periodical reports authorized are annual reports. The order is invalid because not limited to interstate commerce. The power of Congress under the Commerce Clause is limited to preserving freedom of commerce.

Congress can not fix or regulate prices to be charged by manufacturers.

The Fifth Amendment is involved. It appears to be the view of the Commission that the information, the power to secure which can be delegated by Congress, includes any information that in any manner may involve any subject over which Congress can legislate.

The intermingling of intrastate and interstate transactions does not justify the demand of the Commission. Commingling of accounts does not expose them to Congressional investigation. The intrastate activities of the appellees have no bearing on interstate commerce. The examination of books to check the reports must be also properly limited.

Profits or prices are not the concern of the Commission; nor is productive capacity and production. Manufacturing is not a public or common calling.

The doctrine of *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407, applies here.

On the appellant's own argument as to the Fourth Amendment, its order violates that Amendment.

Mr. Chief Justice Taft delivered the opinion of the Court.

This was a bill in equity brought in the Supreme Court of the District of Columbia on behalf of twenty-two companies of Ohio, Pennsylvania, West Virginia, New York, Delaware, New Jersey and Maryland, in the coal, steel and related industries, to enjoin the Federal Trade Commission from enforcing or attempting to enforce orders issued by that Commission against the complainant com-

panies, requiring them to furnish monthly reports of the cost of production, balance sheets, and other voluminous information in detail, upon a large variety of subjects relating to the business in which complainant corporations are engaged. The authority under which the Commission professed to act was expressed in the following resolution adopted by the Commission, December 15, 1919:

" Whereas at a hearing held by the Committee on Appropriations of the House of Representatives on August 25th, 1919, the Federal Trade Commission was requested to suggest what it might undertake to do to reduce the high cost of living; and

" Whereas the commission recommended to the said committee that it would be desirable to obtain and publish from time to time current information with respect to ' the production, ownership, manufacture, storage, and distribution of foodstuffs, or other necessaries, and the products or by-products arising from or in connection with the preparation and manufacture thereof, together with figures of cost and wholesale and retail prices,' and particularly with respect to various basic industries, including coal and steel; and

" Whereas the said committee recommended an appropriation of $150,000 for the current fiscal year for the said commission in consequence of this recommendation and the same was duly made by authority of Congress, and made available on November 4, 1919: Now, therefore, be it

" Resolved, That the Federal Trade Commission by virtue of section 6, paragraphs (a) and (b), of the Federal Trade Commission act, proceed to the collection and publication of such information with respect to such basic industries as the said appropriation and other funds at its command will permit: And be it further

"*Resolved,* That such action be started as soon as possible with respect to the coal industry and the steel industry, including in the latter closely related industries such as the iron ore, coke, and pig iron industries."

Purporting to proceed under this resolution, the Commission served separate notices upon the twenty-two appellees and many other corporations, engaged in mining, manufacturing, buying and selling coal, coke, ore, iron and steel products, etc., which directed them to furnish monthly reports in the form prescribed showing output of every kind, itemized cost of production, sale prices, contract prices, capacity, buying orders, depreciation, general administration and selling expenses, income, general balance sheet, etc., etc. Elaborate questionnaires, accompanying these orders, asked for answers revealing the intimate details of every department of the business, both intrastate and interstate. A summary of these, printed in the margin, sufficiently indicates their contents.*  The concluding paragraph of the notice de-

---

\* Summary of interrogatories submitted by Federal Trade Commission to sundry corporations with direction to report monthly.

(1) Quantities of 44 specified products produced.

(2) Costs of 25 products from each battery of ovens, furnace, mill or other unit of operation.

(3) Sales prices ("actual realization f. o. b. mill after deduction of freight allowance") of 19 products, separately as to domestic and export shipments.

(4) Contract prices ("base price less freight allowance") named in orders for future delivery of 19 products, separately as to domestic and export shipments.

(5) Capacity of ovens, furnaces, works and mills in respect of 18 products.

(6) Orders booked during each month and orders unfilled at the end of each month respecting 19 products.

(7) Depreciation and general administrative and selling expenses allocated to 17 products, details of income from other sources, balance of net income transferred to surplus, with details of interest,

clared—" The purpose of this report is to compile in combined or consolidated form the data received from individual companies and to issue currently in such form accurate and comprehensive information regarding changes in the conditions of the industry both for the benefit of the industry and of the public."

Appellees did not comply with the inquiries in the notices but filed in the Supreme Court, District of Columbia, their joint bill against the Commission and its members, wherein they set out its action, alleged that it had exceeded its powers, and asked that all defendants be restrained " from the enforcement of said orders, and from requiring answers to said questionnaires, and from taking any proceedings whatever with reference to the enforcement of compliance with said orders and answers to said questionnaires;" also for general relief.

Without questioning the appellees' right to seek relief by injunction, the appellants answered, admitted issuing of the orders, claimed authority therefor under §§ 6, and 9, Federal Trade Commission Act, September 26, 1914, c. 311, 38 Stat. 717, 721, 722, and further alleged and said—

That the reports were required " for all the purposes and under all the authority granted to them by law, including the purpose of gathering and compiling said information for publication and the consequent regulation of the interstate commerce of said complainants resulting from such publication of the true trade facts as to all of the business of complainants and of others en-

---

rentals, cash discounts on purchases, royalties, dividends from affiliated or subsidiary companies, income from outside investments, and details of deductions from net income, including federal income and excess profit taxes, interest on bonds and notes, sinking fund provisions, discount on bonds and notes, losses on investments, amortization, losses on contracts, reorganization expenses, fire losses, donations, adjustment of property value and bonuses to officials.

gaged in commerce in those commodities, and including the purpose of making reports to Congress and of recommending additional legislation to Congress.

" Defendants allege that all of the information to be acquired through the answers to said questionnaires is necessary and has direct relation to regulation and control of the interstate and foreign commerce of complainants and others answering said questionnaires, and is sought by the Federal Trade Commission for the purpose and in necessary aid of the regulation of said commerce.

" Defendants admit that no complaint has been filed or is now pending before the commission against any of complainants for a violation of § 5 of the trade commission act, but aver that the activities sought to be enjoined were instituted and are sought to be carried on under the provisions of said trade commission act.

" That one purpose of the requirements made in this case is the gathering of complete information, which is necessary in the proper regulation through publicity of the true facts as to the interstate business of the industry. That such purpose can not be properly performed without the acquisition of the complete facts. That the acquisition of the complete information and facts required will effectuate such purpose, in that the dissemination of such complete trade information will tend to prevent undue fluctuations and panic markets based on ignorance of the true facts, or based on incomplete and partial or self-interested information published only whenever and in so far as it may serve those self-interested who may publish it. That regulation by publicity is, and for a long time has been, recognized as one form of regulation which has been generally conceded to be fair and equitable to all concerned. That unless such regulation through public dissemination of the full and complete facts is carried out, other more drastic forms of attempted regulations without proper information may follow.

" That in addition to the regulatory effect, in and of itself, of such public dissemination of the complete facts, it is one of the purposes of these activities to gather and convey to Congress, for its information in the performance of its duties, the full and complete facts, in order that instead of legislating on incomplete or partial or prejudiced information, it may have the full facts before it. That if any regulatory effect upon intrastate commerce flows from such publicity, it is merely incidental to the general regulation of interstate commerce, as to which the power of Congress is complete."

The cause was heard upon motion to strike the answer from the files because it contained no adequate defense. The trial court concluded that, as the propounded questions were not limited to interstate commerce, but asked also for detailed information concerning mining, manufacture and intrastate commerce, they were beyond the Commission's authority. "The power claimed by the Commission is vast and unprecedented. The mere fact that a corporation engaged in mining ships a portion of its product to other States does not subject its business of production or its intrastate commerce to the powers of Congress." It accordingly held the answer insufficient and, as defendants declined to amend, granted the injunction as prayed. The Court of Appeals affirmed this action. 285 Fed. 936; 52 App. D. C. 202. The cause, here by appeal, has been twice argued.

Appellees were not charged with practicing unfair methods of competition (§ 5, Act of September 26, 1914) or violating the Clayton Act (c. 323, §§ 2, 3, 7, 8, 38 Stat. 730, 731, 732). Orders under such charges can be enforced only through a Circuit Court of Appeals (§ 11, Clayton Act; § 5, Federal Trade Commission Act).

The action of the commission here challenged must be justified, if at all, under the paragraphs of §§ 6 and 9, Act of September 26, 1914, copied below, and the only

methods prescribed for enforcing orders permitted by any of these paragraphs are specified in §§ 9 and 10. They are applications to the Attorney General to institute an action for mandamus, and proceedings by him to recover the prescribed penalties.

" Sec. 6. That the commission shall also have power—

"(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other corporations and to individuals, associations, and partnerships.

"(b) To require, by general or special orders, corporations engaged in commerce, excepting banks, and common carriers subject to the Act to regulate commerce, or any class of them, or any of them, respectively, to file with the commission in such form as the commission may prescribe annual or special, or both annual and special, reports or answers in writing to specific questions, furnishing to the commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective corporations filing such reports or answers in writing. Such reports and answers shall be made under oath, or otherwise, as the commission may prescribe, and shall be filed with the commission within such reasonable period as the commission may prescribe, unless additional time be granted in any case by the commission.

.    .    .    .    .    .    .    .

"(f) To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recom-

mendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.

"(g) From time to time to classify corporations and to make rules and regulations for the purpose of carrying out the provisions of this Act.

"(h) To investigate, from time to time, trade conditions in and with foreign countries where associations, combinations, or practices of manufacturers, merchants, or traders, or other conditions, may affect the foreign trade of the United States, and to report to Congress thereon, with such recommendations as it deems advisable. . . .

"Sec. 9. That for the purposes of this Act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence.

"Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence. . . .

" Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this Act or any order of the commission made in pursuance thereof.   .  .  .

" Sec. 10. That any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry, or to produce documentary evidence, if in his power to do so, in obedience to the subpoena or lawful requirement of the commission, shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine or not less than $1,000 nor more than $5,000, or by imprisonment for not more than one year, or by both such fine and imprisonment.   .  .  .

" If any corporation required by this Act to file any annual or special report shall fail to do so within the time fixed by the commission for filing the same, and such failure shall continue for thirty days after notice of such default, the corporation shall forfeit to the United States the sum of $100 for each and every day of the continuance of such failure, which forfeiture shall be payable into the Treasury of the United States, and shall be recoverable in a civil suit in the name of the United States brought in the district where the corporation has its principal office or in any district in which it shall do business.   It shall be the duty of the various district attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures.   The costs and expenses of such prosecution shall be paid out of the appropriation for the expenses of the courts of the United States."

There was nothing which the Commission could have done to secure enforcement of the challenged orders except

to request the Attorney General to institute proceedings for a mandamus or supply him with the necessary facts for an action to enforce the incurred forfeitures. If, exercising his discretion, he had instituted either proceeding the defendant therein would have been fully heard and could have adequately and effectively presented every ground of objection sought to be presented now. Consequently, the trial court should have refused to entertain the bill in equity for an injunction.

We think that the consent of the parties was not enough to justify the court in considering the fundamental question that has been twice argued before us. It was intended by Congress in providing this method of enforcing the orders of the Trade Commission to impose upon the Attorney General the duty of examining the scope and propriety of the orders, and of sifting out of the mass of inquiries issued what in his judgment was pertinent and lawful before asking the Court to adjudge forfeitures for failure to give the great amount of information required or to issue a mandamus against those whom the orders affected and who refused to comply. The wide scope and variety of the questions, answers to which are asked in these orders, show the wisdom of requiring the chief law officer of the Government to exercise a sound discretion in designating the inquiries to enforce which he shall feel justified in invoking the action of the court. In a case like this, the exercise of this discretion will greatly relieve the court and may save it much unnecessary labor and discussion. The purpose of Congress in this requirement is plain, and we do not think that the court below should have dispensed with such assistance. Until the Attorney General acts, the defendants can not suffer, and when he does act, they can promptly answer and have full opportunity to contest the legality of any prejudicial proceeding against them. That right being adequate, they were not in a position to ask relief by injunction. The bill should have been dismissed for want of equity.

This conclusion leads to a reversal of the decree of the District Court of Appeals and a remanding of the case to the Supreme Court of the District with direction to dismiss the bill.

                                        *Reversed.*

MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER took no part in the consideration or decision of this case.

The separate opinion of MR. JUSTICE MCREYNOLDS.

I think the decree below should be affirmed—the Commission went beyond any power granted by Congress.

This appeal was taken four years ago. Nearly seven years have passed since the cause began—June 12, 1920. Able counsel have argued it twice before us, but none suggested that the trial court erred in failing to dismiss the bill because there was an adequate remedy at law. Under well-settled doctrine such a defense may be waived by failure promptly to advance it. *Reynes* v. *Dumont,* 130 U. S. 354, 395; *Singer Sewing Machine Co.* v. *Benedict,* 229 U. S. 481, 484; *American Mills Co.* v. *American Surety Co.,* 260 U. S. 360, 363.

In my view it is now much too late for this court first to set up and then maintain the defense of lack of jurisdiction in the trial court, and I cannot acquiesce in the disposition of the cause upon that instable ground. The real issue should be met and determined.