FLEMING v. CUDAHY PACKING CO.

No. 1802.

District Court, S. D. California, Central Division.

Nov. 7, 1941.

Gerard D. Reilly, Sol., Wage and Hour Division, U. S. Dept of Labor, and Irving J. Levy, Asst. Sol. in Charge of Litigation, Wage and Hour Division, U. S. Dept. of Labor, both of Washington, D. C., Dorothy M. Williams, Regional Atty., Wage and Hour Division, U. S. Dept. of Labor, of San Francisco, Cal., and Alvin F. Horowitz, Asst. Atty., Wage and Hour Division, U. S. Dept. of Labor, of Los Angeles, Cal., for petitioner.

Elmer H. Howlett and Towson T. Mac-Laren, both of Los Angeles, Cal., for respondent.

J. F. T. O'CONNOR, District Judge.

Philip B. Fleming, Administrator of the Wage and Hour Division of the United States Department of Labor, has filed his petition praying that an order be directed to the Cudahy Packing Company, a corporation, to show cause, if any it has, why an order should not issue requiring said corporation to appear before petitioner or one of the officers designated by him at such time and place as the court may order and there produce certain documentary evidence involving an investigation pursuant to the provisions of Sections 9 and 11(c) of the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., of complaints of violations by said Cudahy Packing Company of Sections 7(a), 11(c), 15(a) (1), 15(a) (2), and 15(a) (5) of said Act, and to give evidence as required by a subpoena duces tecum issued under the direction and by the authority of said Administrator. The subpoena commanded the corporation to produce the following books, papers and documents:

"(1) Any and all books and records which record wages paid your employees employed in your establishment at 803 East Macy Street, Los Angeles, California, since October 24, 1938.

"(2) Any and all books, documents, time cards, time sheets, papers and memoranda made or kept by you which record the hours worked each workday and each workweek by your said employees at your establishment at 803 East Macy Street, Los Angeles, California, since October 24, 1938.

"(3) Any and all books, records, documents, receiving slips, invoices or memoranda of purchases and shipments received by you at your establishment at 803 East Macy Street, Los Angeles, California, for the months of December 1938, December 1939, December 1940, and July 1941.

"(4) Any and all invoices, shipping receipts, copies of bills of lading or other documents, records or memoranda pertaining to goods sold, shipped, delivered, transported or offered for transportation from your establishment at 803 East Macy Street, Los Angeles, California, for the months of December 1938, December 1939, December 1940, and July 1941."

Petitioner averred that the respondent is a corporation organized and existing under and by virtue of the laws of the State of Maine, and is engaged in doing business in the State of California at 803 East Macy Street, Los Angeles; that respondent is engaged in interstate commerce and in the production of goods for interstate commerce; that the Administrator, having found that there were reasonable grounds to believe the respondent was violating the provisions of Sections 7, 11(c) and the regulations issued pursuant thereto (known as Part 516, a copy of which, together with the amendments thereto in force and effect at the time of the issuance of said order and of the subpoena duces tecum hereinafter referred to, was attached to the petition), 15(a) (1), 15(a) (2), and 15(a) (5) of the Act, pursuant to Sections 9 and 11(a) of the Act, executed an order (copy of which was attached to the petition), authorizing an investigation to be made to determine whether the respondent had violated or was violating any of the provisions of the Act or of the regulations.

Petitioner further alleged that the respondent failed to appear at the time and place fixed in the subpoena with the documentary evidence demanded, and in lieu thereof addressed a letter to the Wage and Hour Division declining to comply with said subpoena, and setting forth in detail its reasons for declining to comply with the demands in the subpoena.

The respondent filed its motion to dismiss the application to compel it to attend, testify and produce documentary evidence, relying principally upon Sections 4 and 9 of the Fair Labor Standards Act of 1938, and further contended that petitioner attempted to violate its rights guaranteed by the Fourth and Fifth Amendments to the Constitution of the United States.

Upon the hearing the respondent, in open court, stipulated that it was engaged in interstate commerce. Respondent maintains that the court is without jurisdiction

for the reason that the petition does not show, upon its face, that it was brought under the direction of and was under the control of the Attorney General, and cites Section 4(b) and Section 9 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 204(b) and § 209; and Sections 6 and 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 46(b) and § 49; and Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978.

Sec. 4(b) of F.L.S.A.1938 provides: "Attorneys appointed under this section may appear for and represent the Administrator in any litigation, but all such litigation shall be subject to the direction and control of the Attorney General."

At the hearing a certified copy of a letter addressed by Frank Murphy, Attorney General of the United States, to the Wage and Hour Division Administrator was received. The pertinent part of the letter is as follows: "The legal staffs of your Administration will handle your legal work, including litigation in the courts of a civil character, with the agreement that notice will be given to the Attorney General in any case involving an issue of constitutionality or if it is carried by any party to the court of last resort of any state or territory or to the Circuit Court of Appeals of the United States."

■■ The statute clearly provides that the attorneys for the Wage and Hour Administrator "may appear for and represent the Administrator in any litigation, * * *." The additional language, which provides "but all such litigation shall be subject to the direction and control of the Attorney General", does not mean that the petition must show upon its face that the Attorney General had authorized the proceedings, or that he should appear as one of the attorneys of record, or that he should actually and in person or by one of his assistants direct the litigation. The Act clearly makes the participation on the part of the Attorney General permissive and not mandatory.

■ If the consent of the Attorney General to file this petition were necessary, which this court does not hold that it was, consent was clearly given by the Attorney General to the Administrator. It was the evident intention and purpose of Congress to place the ultimate responsibility with the Department of Justice. The advantages of placing litigation under and subject to the control of the Attorney General lie in thus avoiding a conflict of policy between various commissions and administrative offices, and placing the ultimate responsibility in the proper Department of the government.

■ The head of the Department of Justice is the Attorney General, a member of the President's Cabinet, and directly responsible to the President. He represents the United States in legal matters generally, and gives advice and opinions when requested by the President or by the heads of the Executive Departments and Congress. The wording of the statute referred to placed the ultimate responsibility for legal actions in the proper Department. Lowell Sun Company v. Fleming, Administrator, 1 Cir., 120 F.2d 213; Fleming, Administrator, v. Lowell Sun Co., D.C. Mass., 36 F.Supp. 320; Cudahy Packing Co., a corporation, v. Fleming, Administrator, opinion 8th Cir., Oct. 11, 1941, 122 F.2d 1005.

■ The contention of the respondent that its rights are violated under the Fourth and Fifth Amendments, and that the Administrator could not compel production of records of any of its employees except those actually within the terms of the Act, and that the Administrator had no right to demand any records of shipments into or out of the respondent's plants, have all been carefully considered, and in no instance have these contentions been sustained by the courts. Andrews, Administrator, v. Montgomery Ward & Co., D.C. 30 F.Supp. 380, and the same case: Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446.

■ The subpoena did not violate the Fourth Amendment, and it complied with all of the requirements to give it legality:

(1) A demand was legally made.

(2) The demand was made by the proper official.

(3) The demand was limited to documents and papers easily identified and definitely described.

(4) The documents and papers demanded were relevant to the inquiry.

The subpoena therefore did not fall under the criticism as set forth in Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Cudahy Packing Company of Louisiana v. Fleming, Administrator, 5 Cir., 119 F.2d 209; Baltimore &

914

Ohio Railroad Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878.

Sec. 9 of the F.L.S.A. provides that: "For the purpose of any hearing or investigation provided for in this Act [chapter], the provisions of sections 9 and 10 (relating to the attendance of witnesses and the production of books, papers, and documents) of the Federal Trade Commission Act of September 16 [26], 1914, as amended (U.S.C., 1934 edition, title 15, secs. 49 and 50 [15 U.S.C.A. §§ 49, 50]), are hereby made applicable to the jurisdiction, powers, and duties of the Administrator, the Chief of the Children's Bureau, and the industry committees."

The respondent contends that this proceeding should be one which comes under the following paragraph: "Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this subdivision [sections 41–46 and 47–58] of this chapter [title] or any order of the commission made in pursuance thereof." U.S.C.A. Title 15, § 49, which paragraph is part of Sec. 9 of the Federal Trade Commission Act. Section 9 of the Federal Trade Commission Act provides that: "In case of disobedience to a subpœna the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence", and further that "Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpœna issue to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question." The word "administrator" should be substituted for the word "Commission" in reading the section.

■ The subpœna was issued and the petition alleges the refusal on the part of the respondent to comply. The court, therefore, was given jurisdiction under the express language of the statute. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Lamar v. United States, 240 U.S. 60, 64, 36 S.Ct. 255, 60 L.Ed. 526; Binderup v. Pathe Exchange, 263 U.S. 291, 305, 44 S.Ct. 96, 68 L. Ed. 308; Interstate Commerce Commission v. Brimson, 154 U.S. 447, 476-478, 14 S.Ct. 1125, 38 L.Ed. 1047; Goodyear Tire & Rubber Co. v. National Labor Relations Board, 6 Cir., 122 F.2d 450.

The respondent is in error when it claims that the purpose of this proceeding is to compel compliance, not with the subpœna in question, but with the order for investigation issued by the Administrator, and concludes that compliance with that order may be compelled only by mandamus.

The F.L.S.A. limits that part of the Federal Trade Commission Act, Sections 9 and 10, to "the attendance of witnesses and the production of books, papers, and documents". It is clear that this proceeding is not to enforce an order of the Administrator. It is to compel compliance with a subpœna. The order of the Administrator which is attached to the petition was a direction to certain assistants of the Administrator to conduct an investigation and to determine whether respondent had violated any of the provisions of the F.L.S.A. It is issued when the employer resists an inspection authorized by Section 11(a). The order was not directed to the respondent and requires no action on its part. Cudahy Packing Company v. Fleming, 8 Cir., October 11, 1941, 122 F.2d 1005. Respondent contends that there is no authority in Section 11(a) of the Act authorizing any investigation by the Administrator or any of his representatives as to purchases and shipment of goods, and neither the Act nor the regulations provide for records to be kept by employers of any of the records described in paragraphs 3 and 4 of the subpœna, and cites his authorities. Cudahy Packing Company v. Fleming, 5 Cir., 119 F.2d 209. After an extended hearing, the court entered judgment compelling obedience to the order with certain exceptions as to some of the records called for. The opinion does not indicate what the excepted records were.

The Administrator in his brief cites his authority for the demand for production of the shipping records; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446. This particular point was not before the court. The court in its opinion pointed out that the subpœna required the respondent to produce records of six months showing wages paid to and

time cards of employees, (2) records showing number of hours scheduled for each department of the mail order branch, and (3) the record of the actual number of hours worked by each of the departments during such period.

■ Sec. 11(a) provides: "The Administrator * * * may investigate and gather data regarding the wages, hours, * * * and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act [chapter], or which may aid in the enforcement of the provisions of this Act [chapter]." The Administrator is confronted with the task and the duty of determining which of the employees of respondent are entitled to the benefits of the Act, and which are exempt under the provisions of Sec. 13(a), or are not engaged in interstate commerce, and also to determine if the respondent is entitled to the exemptions, Sec. 7(c). It would be practically impossible for the Administrator to carry out the duty imposed on him by the Act if he were denied the information demanded under paragraphs 3 and 4 of the subpœna, and such information is necessary to determine whether the respondent has violated Sec. 15(a) (1) which prohibits the sale and shipment in interstate commerce of any goods in the production of which employer or employees were employed, in violation of the wage and hour provisions of Sections 6 and 7, or any other provisions of the Act, and is essential to aid in the enforcement of the provisions of the Act.

■ The authority given by Congress to the Administrator to issue subpœnas vests in him great power and equal responsibility. The courts have always been careful to examine the demand and to check any possible abuse of power. McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445. Circuit Judge L. Hand said: "No doubt a subpœna may be so onerous as to constitute an unreasonable search. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. Even then, the sancton is unobjectionable, unlike a descent upon one's dwelling or the seizure of one's papers; the search is 'unreasonable' only because it is out of proportion to the end sought, as when the person served is required to fetch all his books at once to an exploratory investigation whose purposes and limits can be determined only as it proceeds. * * *"

Chief Justice Groner, in Bank of America National Trust and Savings Association v. Douglas et al, 70 App.D.C. 221, 105 F.2d 100, 107, 123 A.L.R. 1266, held that the subpœna issued by the Securities Exchange Commission was so unreasonable as to require correction. "It is perfectly clear, we think, that compliance with these demands will, for all practical purposes, close the Bank, and it is equally clear that by transferring the place of hearing from Washington to San Francisco the Commission may carry on its investigation without unduly and unreasonably hampering the Bank in its business. If this is so, then any other course is so unreasonable as to require correction. * * *"

■ Congress clearly expressed its purpose in the passage of this Act, under its power to regulate commerce among the several states, "to correct as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power." 29 U.S.C.A. § 202(b). Among the conditions Congress desired to eliminate were labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being of workers, and to eliminate labor disputes by securing for employees fair and reasonable wages, hours and conditions not detrimental to health where the labor is performed, and to eliminate unfair methods of competition in commerce. The Act should therefore be interpreted to enable the Administrator to carry out its provisions consistent with the Constitution and the accepted rules of construction.

It is the opinion of the court that the subpœna of the Administrator should be modified in the following particulars:

(1) Any and all books and records which record wages paid your employees employed in your establishment at 803 East Macy Street, Los Angeles, California, during the calendar year of 1940 and from January 1, 1941 to October 1, 1941.

(2) Any and all books, documents, time cards, time sheets, papers and memoranda made or kept by you which record the hours worked each workday and each workweek by your said employees at your establishment at 803 East Macy Street, Los Angeles,

916

California, during the calendar year of 1940 and from January 1, 1941 to October 1, 1941.

(3) Any and all books, records, documents, receiving slips, invoices or memoranda of purchases and shipments received by you at your establishment at 803 East Macy Street, Los Angeles, California, for the months of December 1939, December 1940 and July 1941.

(4) Any and all invoices, shipping receipts, copies of bills of lading or other documents, records, or memoranda pertaining to goods sold, shipped, delivered, transported or offered for transportation from your establishment at 803 East Macy Street, Los Angeles, California, for the months of December 1939, December 1940 and July 1941.

This judgment and order is made without prejudice and the Administrator may apply to the court for further relief if the stricken portions of the subpœna are found to be essential to the investigation, or other records are deemed necessary. The respondent will therefore comply with the demand in the subpœna as modified.