**ANHEUSER–BUSCH, INCORPORATED, a corporation, and Paul C. Guignon, Divisional Vice-President, Anheuser-Busch, Incorporated, Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION, Paul Rand Dixon, Chairman, Philip Elman, A. Everette MacIntyre, John R. Reilly, and Mary Gardiner Jones, Commissioners, J. W. Bollinger, Alan C. Schneeberger, Defendants.**

No. 64 C 449(2).

United States District Court
E. D. Missouri, E. D.

June 10, 1965.

Dwight D. Ingamells, St. Louis, Mo., Harold F. Baker and Victor P. Kohl, Jr., Washington, D. C., for plaintiffs.

R. D. FitzGibbon, Jr., U. S. Atty., Robt. J. Koster, Asst. U. S. Atty., St. Louis, Mo., James McI. Henderson, Gen. Counsel, Chas. C. Moore, Jr., Gerald J. Thain, Attys., F. T. C., Washington, D. C., for defendants.

MEREDITH, District Judge.

This matter is pending before this Court on defendants' motion to dismiss the plaintiffs' complaint, or in the alternative for summary judgment; and on the plaintiffs' motion for a summary judgment.

The plaintiffs allege this Court has jurisdiction under 28 U.S.C.A. §§ 1331, 1332, 1337, 1361 and 1391, and under section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, and under Federal Declaratory Judgments Act, 28 U.S.C.A. § 2201–2202. The defendants in their motion to dismiss contend that this Court lacks jurisdiction over the subject matter, and the complaint fails to state a claim upon which relief can be granted.

Plaintiff, Anheuser-Busch, Incorporated, is one of the manufacturers of compressed yeast and active dry yeast being investigated by the defendant, Federal Trade Commission, hereinafter called the Commission. The Commission is investigating whether and to what extent there has been any discrimination in the granting of price concessions or service by members of the industry which would be in violation of section 2(a), (d) and (e) of the amended Clayton Act [15 U.S.C.A. § 13(a), (d) and (e)]. The investigation is also for the purpose of determining if plaintiff, Anheuser-Busch, Incorporated, and others, may have violated section 5 of the Federal Trade Commission Act [15 U.S.C.A. 45(a) (1)] by having entered into agreements regarding the establishment and maintenance of common prices and allocations of customers, markets, and territories, and to look into the acquisition by Red Star Yeast & Products Corporation of Consumers' Yeast Corporation and Peerless Yeast Corporation as a possible violation of section 7 of the amended Clayton Act (15 U.S.C.A. § 18).

Pursuant to its authority under sections 6(b) and 9 of the Federal Trade Commission Act [15 U.S.C.A. §§ 46(b), 49], the Commission requested from the plaintiff Anheuser-Busch, Incorporated, certain information, documents, and access to company records. The defendants Schneeberger and Bollinger conducted the investigation of Anheuser-Busch, Incorporated.

The only request Anheuser-Busch did not comply with and refused to answer was question 31 of the Commission's questionnaire, which reads as follows:

"31. What is the production cost per pound of yeast (both types) for your firm for each year from 1958 to the present? What is the cost of each other process or item subse-

quent to production and prior to the time your yeast is actually sold and delivered to a customer for each pound of yeast (both types) so delivered for each year from 1958 to the present? What is the profit per pound derived by your firm for the yeast (both types) it sells for each year from 1958 to the present? If profit varies with price, so specify and give details thereon."

On July 20,· 1964, subpoena duces tecum and ad testificandum was served upon Paul C. Guignon, Divisional Vice-President, Anheuser-Busch, Inc., seeking the information which Anheuser-Busch, Incorporated, had refused to furnish.

On July 29, 1964, plaintiffs filed with the Commission a motion to quash subpoena duces tecum and for other relief. In said motion plaintiffs also requested the Commission to enter an order allowing Anheuser-Busch to file with the Commission in camera an affidavit concerning the nature of its cost data and the adverse effects which disclosure would have upon Anheuser-Busch.

The motion to quash was based upon two grounds: (1) the information sought by the subpoena would reveal closely guarded trade secrets, disclosure of which would irreparably injure Anheuser-Busch and defendants had failed to demonstrate the relevancy of the material requested to their investigation; and (2) plaintiff Guignon would be deprived of his right to proper representation by counsel when testifying under Commission Rules regarding investigational hearings.

On November 25, 1964, the Commission issued an order denying the motion to quash and the request to allow Anheuser-Busch to file with the Commission in camera an affidavit on the cost data.

The plaintiffs on December 16, 1964, filed this complaint seeking a declaratory judgment, preliminary injunction and permanent injunction. The preliminary injunction is moot, because on December 18, 1964, the Commission issued an order cancelling the return date of December 30, 1964, of subpoena duces tecum until further order of the Commission. The complaint is based on the same grounds on which the plaintiffs sought to quash the Commission's subpoena.

This Court is of the opinion that the plaintiffs have an adequate remedy at law and that, therefore, the complaint is subject to dismissal for want of equity.

The pertinent language in the Federal Trade Commission Act dealing with investigational subpoena and the jurisdiction of the district courts is found in sections 9 and 10 (15 U.S.C.A. §§ 49 and 50):

"49. For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence.

"Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

"Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, is-

sue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

"Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of sections 41–46 and 47–58 of this title or any order of the commission made in pursuance thereof. * * *

"50. Any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry or to produce documentary evidence, if in his power to do so, in obedience to the subpoena or lawful requirement of the commission, shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine of not less than $1,000 nor more than $5,000, or by imprisonment for not more than one year, or by both such fine and imprisonment."

In Federal Trade Comm. v. Claire Furnace Co., 274 U.S. 160, 47 S. Ct. 553, 71 L.Ed. 978 (1927), plaintiffs corporations filed a bill in equity to enjoin the Federal Trade Commission from enforcing or attempting to enforce orders issued by the commission against the plaintiffs companies requiring them to furnish reports, cost of production, etc., on the ground that the Commission had exceeded its powers. The Supreme Court stated that the District Court did not have jurisdiction and said 274 U.S. at pages 173–174, 47 S.Ct. at page 556:

"There was nothing which the Commission could have done to secure enforcement of the challenged orders except to request the Attorney General to institute proceedings for a mandamus or supply him with the necessary facts for an action to enforce the incurred forfeitures. If, exercising his discretion, he had instituted either proceeding, the defendant therein would have been fully heard, and could have adequately and effectively presented every ground of objection sought to be presented now. Consequently the trial court should have refused to entertain the bill in equity for an injunction.

"We think that the consent of the parties was not enough to justify the court in considering the fundamental question that has been twice argued before us. It was intended by Congress in providing this method of enforcing the orders of the Trade Commission to impose upon the Attorney General the duty of examining the scope and propriety of the orders, and of sifting out of the mass of inquiries issued what in his judgment was pertinent and lawful before asking the court to adjudge forfeitures for failure to give the great amount of information required or to issue a mandamus against those whom the orders affected and who refused to comply. The wide scope and variety of the questions, answers to which are asked in these orders, show the wisdom of requiring the chief law officer of the government to exercise a sound discretion in designating the inquiries to enforce which he shall feel justified in invoking the action of the court. In a case like this, the exercise of this discretion will greatly relieve the court and may save it much unnecessary labor and discussion. The purpose of Congress in this requirement is plain, and we do not think that the court below should have dispensed with such assistance. Until the Attorney General acts, the defendants cannot suffer, and, when he does act, they can promptly answer and have full opportunity to contest the le-

gality of any prejudicial proceeding against them. That right being adequate, they were not in a position to ask relief by injunction. The bill should have been dismissed for want of equity."

The Supreme Court in St. Regis Paper Co. v. United States, 368 U.S. 208, 226, 82 S.Ct. 289, 299, 7 L.Ed.2d 240 (1961), states that its earlier decision in Federal Trade Comm. v. Claire Furnace Co., supra, was correct because "the subjects of the reports could not suffer any injury or penalty at that point in the investigation."

■ But in the St. Regis case the Commission had issued notice of default on the orders and the orders had been forwarded to the Attorney General for enforcement. The Supreme Court said in the St. Regis case that the forfeiture provision in section 10 of the Federal Trade Commission Act (15 U.S.C.A. § 50) does not deprive a corporation of property without due process of law. Section 10 provides that 30 days after the Commission has given notice that a corporation has failed to comply with an order of the Commission to file a report, the corporation shall forfeit the sum of $100 for each and every day of the continuance of such failure.

St. Regis Paper Co. based its argument "on the premise that the orders of the Commission were not judicially reviewable except at the risk of paying daily forfeitures accumulating throughout the period of noncompliance, including the period of judicial review." St. Regis Paper Co. v. United States, supra, l. c. 225, 82 S.Ct. at page 299.

The Supreme Court suggested that after the Government started the proceedings in the district court, the corporation could have sought a stay and stayed the accumulation of further penalties. Also, the Supreme Court pointed out in the St. Regis case, supra, that *after* the entry of the notices of default by the Commission, St. Regis might have sought relief under the Declaratory Judgments Act before the section 10 forfeitures began to accrue instead of waiting for the Attorney General to sue for their collection.

■ It is very rare that a court will impose a prior restraint before an administrative agency has acted. This was pointed out in Wolf Corporation v. Securities and Exchange Commission, 115 U.S.App.D.C. 75, 317 F.2d 139 (1963), l. c. 142:

"Judicial power to impose prior restraint is not called an extraordinary remedy without reason. Even as between private parties the ordinary remedy is legal action after injury. Prior restraint is granted only upon a strong showing and is subject to definite and well established limitations. Prior restraint against governmental action, regular on its face and under color of authority, is even more cautiously exerted. Still higher hurdles stand in the way of prior restraint against the processes of a regulatory body exercising quasi-judicial powers which can be judicially reviewed as a matter of right before they become final. In this third category the jurisdiction of the regulatory or administrative body is exercised within the framework of a statutory scheme in which it acts as an arm of Congress; moreover it has established patterns of procedure and acts in a context where courts have long acknowledged a considerable deference to the specialized experience and competence of such a body. To exert judicial power to stop processes of this third category, which can always be judicially reviewed when the story is fully told and recorded, is an extraordinary step in the usual as well as the legally artful sense of that word."

Also see Securities & Exchange Com'n v. R. A. Holman & Co., 323 F.2d 284 (D.C. Cir. 1963).

The Supreme Court in McCulloch v. Sociedad National, 372 U.S. 10 (1963), l. c. 16, 83 S.Ct. 671, at page 675, 9 L.Ed. 2d 547, stated at what period a district

court has jurisdiction to enjoin an administrative agency order:

"Having examined the question whether the District Court had jurisdiction at the instance of Sociedad to enjoin the Board's order, we hold that the action falls within the limited exception fashioned in Leedom v. Kyne, 358 U.S. 184 [79 S.Ct. 180, 3 L.Ed.2d 210] (1958). In that case judicial intervention was permitted since the Board's order was 'in excess of its delegated powers and contrary to a specific prohibition in the Act.' Id., at 188 [79 S.Ct. at 183, 184, 3 L.Ed.2d 210]. While here the Board has violated no specific prohibition in the Act, the overriding consideration is that the Board's assertion of power to determine the representation of foreign seamen aboard vessels under foreign flags has aroused vigorous protests from foreign governments and created international problems for our Government. Important interests of the immediate parties are of course at stake. But the presence of public questions particularly high in the scale of our national interest because of their international complexion is a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power. No question of remotely comparable urgency was involved in Kyne, which was a purely domestic adversary situation. The exception recognized today is therefore not to be taken as an enlargement of the exception in Kyne."

The Declaratory Judgments Act, 28 U.S.C.A. § 2201, is not available to the plaintiffs in this case because this Court cannot enjoin the defendants. The Declaratory Judgments Act is a procedural act which adds a remedy for use in cases where a federal court has jurisdiction. Therefore, since this Court cannot enjoin the defendant, it cannot grant relief under the Declaratory Judgments Act. See Utah Fuel Co. v. National Bituminous Coal Commission, 101 F.2d 426 (D.C.Cir.1939), aff'd 306 U.S. 56, 59

S.Ct. 409, 83 L.Ed. 483 (1939), and 3 Barron & Holtzoff Federal Practice and Procedure, § 1262, and cases in note 16.

In Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the plaintiffs sought a declaratory judgment and injunction to prevent the Internal Revenue Service from obtaining alleged work product through a subpoena under section 7602 of the Internal Revenue Code. The enforcement procedure of a subpoena issued by the Internal Revenue Service is the same as the Federal Trade Commission Act, sections 9 and 10. In the Reisman case the Supreme Court held that the plaintiffs had an adequate remedy at law and that, therefore, the complaint was subject to dismissal for want of equity.

Accordingly, this Court will enter an order dismissing the plaintiffs' complaint.