June 15, 1979

## 79-43   MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL DIVISION

### Settlement of Litigation—Authority of the Postal Service (39 U.S.C. §§ 409, 2008)—Authority of the Attorney General (28 U.S.C. §§ 516, 519)

This responds to your memorandum of March 14, 1979, requesting our opinion concerning the settlement of litigation in which the U.S. Postal Service (Postal Service) is represented by the Department of Justice pursuant to 39 U.S.C. § 409(d).[1] You ask in particular whether this Office still adheres to the position taken in its memorandum of February 13, 1973. That memorandum concluded that although the matter was not free from doubt the better interpretation of the pertinent legislation is that the authority to settle is implicit in the power of the Attorney General to conduct litigation affecting the Postal Service; hence, that such litigation cannot be settled without the concurrence of the Attorney General.

For the reasons set forth below in detail, we are modifying the position taken in our earlier memorandum to the extent that where litigation involves a matter within the sole prerogative of the Postal Service, the Attorney General cannot settle the litigation over the objection of the Postal Service, nor can he block a settlement advocated by the Postal Service. Otherwise we adhere to our memorandum of February 13, 1973.

The issues underlying your inquiry and our 1973 memorandum are, first, whether 39 U.S.C. § 2008(c) gives the Postal Service final settlement

---

[1] 39 U.S.C. § 409(d) provides:

(d) The Department of Justice shall furnish, under section 411 of this title, the Postal Service such legal representation as it may require, but with the prior consent of the Attorney General the Postal Service may employ attorneys by contract or otherwise to conduct litigation brought by or against the Postal Service or its officers or employees in matters affecting the Postal Service.

authority over its litigation,[2] and, second, whether the independent status of the Postal Service under the Postal Reorganization Act limits the controls normally exercised by the Attorney General over agency litigation pursuant to 28 U.S.C. §§ 516, 519.[3]

Our subsequent memorandum to the Special Assistant to the Solicitor General, dated September 28, 1973, took a more cautious position than the earlier memorandum and concluded that "given the language of 39 U.S.C. § 2008(c), it is far from clear that this Department could successfully maintain that in no instance may the Postal Service settle a case without the concurrence of this Department." The memorandum suggested that this problem might better be resolved on the basis of an agreement between the Department of Justice and the Postal Service.

Since then the Court of Appeals for the First Circuit handed down its decision in *Leonard* v. *United States Postal Service*, 489 F. (2d) 814 (1st Cir., 1974), holding that in the specific litigation before it the Postal Service had the authority to settle a law suit over the objection of the Department of Justice. The court stated that "the legislative history [of 39 U.S.C. § 2008(c)] pointed out to us does not indicate that the section was meant to have a reading not in accord with its literal language." At 817. The court, however, did not deem it necessary to provide a definitive delineation of the respective litigating powers of the Postal Service and the Department of Justice. It felt it sufficient to rule that in the case at bar the Department of Justice could not block a settlement concluded by the Postal Service affecting matters which, under the Postal Reorganization Act, were committed to the control of the Postal Service. The opinion also suggested that while the authority of the Department of Justice over litigation might empower it to refuse to entertain and possibly to settle litigation even over the objection of the Postal Service, the Department lacked the authority to block a settlement to which it agreed. Fn. 7, p. 817.

Although we do not agree with all the reasoning of the Court of Appeals, it may have reached the correct result in the case before it, assuming that the subject matter of the litigation truly was peculiarly within the

---

[2] 39 U.S.C. § 2008(c) provides:

(c) Subject only to the provisions of this chapter, the Postal Service is authorized to make such expenditures and to enter into such contracts, agreements, and arrangements, upon such terms and conditions and in such manner as it deems necessary, *including the final settlement* of all claims and litigation by or against the Postal Service. [Emphasis added.]

[3] 28 U.S.C. §§ 516 and 519 provide:

Section 516. *Conduct of litigation reserved to Department of Justice.* Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General. Section 519. *Supervision of litigation.* Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

autonomous sphere of the Postal Service.[4] In connection with its interpretation of 39 U.S.C. § 2008(c), we believe that it would have been possible for the Department to make a stronger case based on the legislative history of the subsection by showing that it was intended to cover only the relationship between the Postal Service and the Comptroller General.[5] Nevertheless, we would recommend relitigation of that issue if at all, only in an exceptionally strong case, for example, where the Postal Service position is clearly erroneous.

The second branch of the Court of Appeals opinion deals with the extent to which the control of the Attorney General over Government litigation conducted by the Department of Justice is modified by the "somewhat uneasy and unresolved tension between the dependent and independent aspects of the new [Postal] Service."[6] *Leonard,* at p. 815. While 39 U.S.C. § 201 establishes the Postal Service as an independent establishment in the "executive branch," § 202(a) provides for a bipartisan Board of Governors with fixed terms who can be removed by the President only for cause. In addition, the Postmaster General and the Deputy Postmaster General are appointed and removable not by the President but by the Board of Governors. § 202(c), (d).

An agency headed by a Board of Governors and by executive officers who are not freely removable by the President is not substantively within the executive branch of the Government as that term is commonly understood. Purely executive officers must be freely removable by the President, *Myers* v. *United States,* 272 U.S. 52 (1926), and their discretionary acts are subject to Presidential control. *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137, 166 (1803); *Congress Construction Co.* v. *United States,* 161

---

[4] *See* fn. 11, *infra.*

[5] Section 2008(c) is located in a chapter entitled "Finance." Section 2008 itself is entitled "Audit and expenditures" and deals exclusively with the relationship between the Comptroller General and the Postal Service. The pertinent Committee report explains § 2008(c) as follows:

Subsection (c);—Authorizes the Postal Service to make all expenditures and enter into all contracts and agreements it deems necessary, including final settlement of all claims against the Postal Service, expenditures cannot be disallowed by the *Comptroller General.* [(Emphasis added.) H. Rept. 1104, 91st Cong., 2d sess. 40 (1970).]

Moreover, § 2008(c) is virtually identical with § 9(c) of the Tennessee Valley Authority Act, 16 U.S.C. § 831h (b). H.R. 4, 91st Cong., 1st sess., a predecessor to the bill that ultimately became the Postal Reorganization Act, used the TVA as a model for the Postal Service. H. Rept. 988, 91st Cong., 2d sess. 19 (1970). The legislative history of a 1941 amendment to the TVA legislation from which the pertinent parts here of 16 U.S.C. § 831h(b) are derived shows that they were inserted in the legislation in response to complaints by the TVA that interference by the Comptroller General had prevented the TVA from entering into compromises that could have avoided litigation and from settling law suits on favorable terms. *See, Amending the Tennessee Valley Authority Act,* Hearing before the Committee on Military Affairs, House of Representatives, 77th Cong., 1st sess., on H.R. 4961, pp. 52–64, 115–116, 121–122, 132, and 87 CONGRESSIONAL RECORD 6199 (1941) (Representative May).

[6] This uneasy and unresolved tension is illustrated by the difference of approach taken by *Leonard* and *Butz Engineering Corp.* v. *United States,* 204 Ct. Cl. 561 (1974). The former case stressed the independence of the Postal Service, while the latter emphasized its dependence.

Ct. Cl. 50, 55–56 (1963), cert. denied, 375 U.S. 817 (1963); 7 Op. Att'y. Gen. 453, 469–470 (1855). Congress clearly did not intend Postal Service officials to have that status. The pertinent committee report (H. Rept. 91–1104) states that the Postal Service was taken completely out of the President's Cabinet and out of politics (at pp. 6, 12–13) and that the Board was to constitute a buffer between the management of the Postal Service and the possible influence of partisan politics. *Ibid.* In sum, the legislation was designed to remove "the day-to-day management of the Postal Service from both Presidential and Congressional areas of concern while still leaving the Postal Service subject to [their] broad policy guidance." At p. 13. Another important legislative consideration was the desire that the Postal Service function in a business-like manner, rather than as a government organization not subject in all respects to that standard. At pp. 11–12.

Section 410(a) of title 39 accordingly exempts the Postal Service from many of the laws dealing with Federal contracts, property, works, officers, employees, budgets, or funds, leaving, however, many important laws in those fields applicable to the Postal Service. 39 U.S.C. § 410(b).[7]

The peculiar status of the Postal Service exempting it to a large extent from Presidential control and from a substantial range of laws normally applicable to executive establishments necessarily has an impact on the control exercised by the Attorney General over postal litigation conducted by the Department of Justice. The Attorney General's power to control litigation under 28 U.S.C. §§ 516, 519 flows from several sources. Some result from his status as an officer of the court. Hence, it is his responsibility not to litigate cases that would unnecessarily burden the Federal courts,[8] and that responsibility applies to litigation by the Department conducted on behalf of independent regulatory agencies. *See, Federal Trade Commission* v. *Claire Furnace Co.*, 274 U.S. 160, 174 (1927); *Federal Trade Commission* v. *Guignon*, 390 F. (2d) 323, 330 (8th Cir. 1968).[9] It is also within his power to refuse to institute litigation and to terminate law suits, once he determines that to bring or to continue them would constitute unjust harassment against private parties. 2 Op. Atty. Gen. 482, 486 (1831). Finally, the Attorney General must be able to prevent action by an executive agency that would be illegal, such as a settlement prohibited by law. 22 Op. Att'y. Gen. 491 (1899).

Another source of the Attorney General's authority and responsibility to control litigation is a derivative of the President's power to control the discretion of the agencies referred to above. That power is vested in the Attorney General as the President's *alter ego*, so that uniform policies

---

[7] For the laws of a governmental nature applicable to the Postal Service, *see, Butz Engineering Corp.* v. *United States*, 204 Ct. Cl. 561, 573–574, *supra*.

[8] *See, Leonard*, fn. 7, p. 817.

[9] In this context *see*, however, the amendment to § 16 of the Federal Trade Commission Act, 15 U.S.C. § 56, by § 204(a) of the Act of January 4, 1975, 88 Stat. 2199.

in the execution of the laws and the conduct of litigation will prevail. This source of the Attorney General's power is necessarily weakened with respect to an entity, such as the Postal Service.

In our view, the answer to the questions posed depends on the basis on which the Attorney General seeks to settle a case, and on the subject matter of the litigation. If the Attorney General acts in his capacity as an officer of the court, or for Government-wide policy reasons based on laws and regulations that cover the Postal Service, we do not believe that consent of the Postal Service is required. Moreover, since the power to dismiss includes the power to prescribe the terms on which the suit is to be dismissed, settlement negotiations are within his jurisdiction, 39 U.S.C. § 2008(c) notwithstanding. *See, Castell* v. *United States,* 98 F. (2d) 88, 91 (2d Cir., 1938), cert. denied, 305 U.S. 652 (1938); *Leonard, supra,* fn. 7, at 817–818; 22 Op. Att'y. Gen. 491, 494 (1899).[10]

On the other hand, where the subject matter of the litigation is of "parochial" interest to the Postal Service and involves its day-to-day management (H. Rept. 91–1004, p. 13, *supra*) without any impact on the general Federal law, or "policy decisions within the sole prerogative of the Postal Service" (*Leonard,* at 817), the spirit and purpose of the Postal Reorganization Act of 1970 indicate that a decision to settle and the conduct of settlement negotiations are both within the jurisdiction of the Postal Service.

Conversely, we do not believe that *Leonard* stands for the proposition that the Attorney General can never block a settlement the Postal Service seeks to conclude. As indicated, above, if the settlement is illegal or if it would create a precedent adversely affecting the Federal establishment as a whole, the Attorney General must be able to prevent it. *Leonard* does not hold to the contrary. That case was based rightly or wrongly[11] on the premise that the litigation involved only matters that were of concern to the Postal Service, and the court deliberately refrained from passing on problems relating to settlements not within those narrow confines.

In our view, our analysis applies equally to the question you pose as to cases pending in the Court of Claims.

---

[10] As we read *Leonard,* § 2008(c) supersedes the statutory settlement authority of the Attorney General only in areas within the sole prerogative of the Postal Service.

[11] The issue in *Leonard* was the policy of hiring employees with arrest records not leading to conviction unless the position was designated as sensitive or the charges were currently pending. A strong argument could be made that this issue was not of a nature peculiar to the Postal Service but that it involved Government-wide employment policies closely related to provisions of title 5, United States Code, which are applicable to the Postal Service pursuant to 39 U.S.C. § 410(b)(1).

We realize that the practical application of our reasoning may be difficult. That, however, is the inescapable consequence of the hybrid status of the Postal Service under the Postal Reorganization Act, *i.e.,* the "uneasy and unresolved tensions between the dependent and independent aspects of the new [Postal] Service." *Leonard,* at 815.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
