## FEDERAL TRADE COMMISSION v. MAYNARD COAL CO.

Court of Appeals of District of Columbia. Argued January 10, 1924. Reargued October 3, 1927. Decided November 7, 1927.

### No. 3984.

Trade-marks and trade-names and unfair competition ⊂⇒80½—Injunction will not lie to restrain Federal Trade Commission from enforcing order requiring complainant to furnish reports and information concerning its business (Federal Trade Commission Act, §§ 9, 10 [15 USCA §§ 49, 50]).

Under Federal Trade Commission Act, §§ 9, 10 (15 USCA §§ 49, 50), injunction will not lie to restrain Federal Trade Commission from enforcing or attempting to enforce an order requiring complainant to furnish monthly reports and other information in detail relative to its business; its remedy at law in case of attempted enforcement of order being adequate.

Appeal from the Supreme Court of the District of Columbia.

Suit for injunction by the Maynard Coal Company against the Federal Trade Commission. From a decree for complainant, defendant appeals. Reversed, and cause remanded, with directions to dismiss.

W. H. Fuller, of McAlester, Okl., and A. F. Busick, of Washington, D. C., for appellant.

K. D. Loos and E. B. Prettyman, both of Washington, D. C., and S. A. Foster, of Chicago, Ill., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a decree of the Supreme Court of the District of Columbia, granting appellee corporation an injunction restraining appellant Federal Trade Commission from enforcing or attempting to enforce an order issued against complainant company, requiring it to furnish monthly reports and other information in detail relative to the business in which the complainant is engaged.

It appears that the Commission recommended to a committee of Congress "that it would be desirable to obtain and publish, from time to time, current information with respect to the 'production, ownership, manufacture, storage, and distribution of foodstuffs, or other necessaries, and the products or by-products arising from or in connection with the preparation and manufacture thereof, together with figures of cost and wholesale and retail prices,' and particularly with respect to various basic industries, including coal and steel."

An appropriation of $150,000 was made available by Congress, and the Commission, under a resolution of its own, resolved to "proceed to the collection and publication of such information with respect to such basic industries as the said appropriation and other funds at its command will permit, and that such action be started as soon as possible with respect to the coal industry and the steel industry, including in the latter closely related industries, such as iron ore, coke, and pig iron industries."

In the present case the inquiry instituted related to the mining output and production at the mines of coal produced by the complainant company. The purpose, it will be observed, of securing information, was for the publication of such information as in the opinion of the Commission would be of interest to the public. As a means of securing this information the Commission issued to complainant company forms of reports, schedules, and questionnaires, calling for detailed information regarding the amount of coal produced, the sales and contract prices thereof, mining costs, administrative and selling expenses, and the filing with the Commission of quarterly income statements and balance sheets.

Complainant was given notice that, if it failed to comply with the orders of the Commission, the penalty prescribed by section 10 of the Trade Commission Act (38 Stat. 717 [15 USCA § 50]) would be enforced against it. Section 10, among other things, provides: "If any corporation required by this Act to file any annual or special report shall fail so to do within the time fixed by the Commission for filing the same, and such failure shall continue for thirty days after notice of such default, the corporation shall forfeit to the United States the sum of $100 for each and every day of the continuance of such failure, which forfeiture shall be payable into the Treasury of the United States, and shall be recoverable in a civil suit in the name of the United States brought in the district where the corporation has its principal office or in any district in which it shall do business. It shall be the duty of the various district attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures. The costs and expenses of such prosecution shall be paid out of the appropriation for the expenses of the courts of the United States."

The Commission presumed to act in this case under the authority conferred in section 6 of the Federal Trade Commission Act (15 USCA § 46), which provides: "That the Commission shall also have power—(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other corporations and to individuals, associations, and partnerships. (b) To require, by general or special orders, corporations engaged in commerce, excepting banks, and common carriers subject to the Act to Regulate Commerce, or any class of them, or any of them, respectively, to file with the Commission in such form as the Commission may prescribe annual or special, or both annual and special, reports

or answers in writing to specific questions, furnishing to the Commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective corporations filing such reports or answers in writing. Such reports and answers shall be made under oath, or otherwise, as the Commission may prescribe, and shall be filed with the Commission within such reasonable period as the Commission may prescribe, unless additional time be granted in any case by the Commission."

The Commission's threat to publish the reports obtained from complainant was based, upon the authority conferred by the Trade Commission Act "to make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest."

With this statement we are forced to the consideration of a controlling question of jurisdiction. In the case of Federal Trade Commission et al. v. Claire Furnace Company et al., 274 U. S. 160, 47 S. Ct. 553, 71 L. Ed. 978, the Supreme Court considered a proceeding identical with that presented in this case, where an injunction had been granted to restrain the threatened enforcement of the penalty for refusal to comply with a similar order of the Commission. The court there held that injunction did not lie, since the statute furnished complainants a complete and adequate remedy at law.

In the Claire Case no notice of default, as contemplated by section 10 of the act, had been issued against the corporations when the petition for injunction was filed. In the present case notice of default had been served before this suit was brought, and the accumulation of penalties of $100 per day, as provided in the act, was running. It is this which counsel for complainant insist distinguishes this case from the Claire Case. We are, however, not impressed with this contention. The decision in the Claire Case turned upon the provision in section 9 of the act (15 USCA § 49) as follows: "Upon the application of the Attorney General of the United States, at the request of the Commission, the District Courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this act or any order of the Commission made in pursuance thereof."

The court held that this vested in the Attorney General discretion to review the orders of the Commission, and determine for himself whether an action should be brought, and, if, in the exercise of his discretion, he decides to institute proceedings in mandamus to acquire the facts necessary for an action to enforce the incurred forfeitures, complainant would have as full and complete opportunity to be heard in defense as is afforded by a proceeding in equity. This discretion, we think, applies the same in a case where notice of default has been served as in a case where such service is merely threatened.

Considering the discretionary power reposed in the Attorney General to control the bringing of actions under the act, the court in its opinion in the Claire Case said:

"There was nothing which the Commission could have done to secure enforcement of the challenged orders except to request the Attorney General to institute proceedings for a mandamus or supply him with the necessary facts for an action to enforce the incurred forfeitures. If, exercising his discretion, he had instituted either proceeding, the defendant therein would have been fully heard, and could have adequately and effectively presented every ground of objection sought to be presented now. Consequently the trial court should have refused to entertain the bill in equity for an injunction. * * * It was intended by Congress in providing this method of enforcing the orders of the Trade Commission to impose upon the Attorney General the duty of examining the scope and propriety of the orders, and of sifting out of the mass of inquiries issued what in his judgment was pertinent and lawful before asking the court to adjudge forfeitures for failure to give the great amount of information required or to issue a mandamus against those whom the orders affected and who refused to comply. The wide scope and variety of the questions, answers to which are asked in these orders, show the wisdom of requiring the chief law officer of the government to exercise a sound discretion in designating the inquiries to enforce which he shall feel justified in invoking the action of the court.

"In a case like this, the exercise of this discretion will greatly relieve the court, and may save it much unnecessary labor and discussion. The purpose of Congress in this requirement is plain, and we do not think that the court below should have dispensed with such assistance. Until the Attorney General acts, the defendants cannot suffer, and, when he does act, they can promptly answer and have full opportunity to contest the legality of any prejudicial proceeding against them. That right being adequate,

they were not in a position to ask relief by injunction. The bill should have been dismissed for want of equity."

The decree is reversed, with costs, and the cause is remanded, with directions to dismiss the bill.