AMERICAN MOTORS CORPORATION,
et al., Plaintiffs-Appellees,

v.

FEDERAL TRADE COMMISSION, et
al., Defendants-Appellants.

No. 79–1048.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1979.

Decided July 2, 1979.

Michael N. Sohn, Gen. Counsel, F.T.C., Washington, D.C., Leonard Schaitman, Edward F. Glynn, Jr., Eloise E. Davies, David Fitzgerald, Civil Division, Dept. of Justice, Washington, D.C., Joanne L. Levine, James K. Robinson, U.S. Atty., Detroit, Mich., for defendants-appellants.

Thomas A. Gottschalk, Donald E. Scott, Kirkland & Ellis, Chicago, Ill., Henry P. Sailer (Am. Motors), Covington & Burling, Leo Loevinger (Chrysler), Hogan & Harston, Washington, D.C., for plaintiffs-appellees.

Before EDWARDS, Chief Judge, LIVELY and MERRITT, Circuit Judges.

EDWARDS, Chief Judge.

This case represents a constitutional attack based on the Fourth and Fifth Amendments upon a Federal Trade Commission resolution and subsequent FTC subpoenas directed to the most important American automobile companies. Plaintiffs' complaint sought equitable relief from the United States District Court. The FTC resolution of August 6, 1976, authorized an industry-wide automobile investigation and directed the FTC staff:

> To investigate the acts, practices and methods of competition of General Motors Corporation, Ford Motor Company, Chrysler Corporation and other firms engaged in the production, sale, and distribution of automobiles to determine the effects thereof on the structure, conduct and performance of the automobile industry and whether such acts, practices and methods of competition may have violated or are violating the Federal Trade Commission Act or other statutes administered by the Commission.

The subpoenas (one such addressed to American Motors was issued on July 10, 1978) seem to require the company concerned to furnish copies of just about all of its records bearing on production and sale of automobiles for the years running back to 1946 and, as far as forecasts are concerned, extending forward through at least the year 1980.

It is plaintiff automobile companies' contention that the subpoenas authorized by this resolution, and now sought to be enforced, are "general warrants" of the nature of King George III's "writs of assistance" which triggered the American Revolution. Further, they claim that this is a "fishing expedition" of the sort condemned in *FTC v. American Tobacco Co.*, 264 U.S. 298, 306, 44 S.Ct. 336, 68 L.Ed. 696 (1924), wherein Mr. Justice Holmes, speaking for a unanimous Court, condemned "fishing expeditions into private papers on the possibility that they may disclose evidence of crime." They rely strongly on Justice Holmes' comment: "It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up." *Id.*

Much water has, however, flowed under many bridges since 1924. As we shall see, Congress and the FTC have created both administrative and statutory remedies which plaintiffs have eschewed. These remedies and the Commission's broad power of investigation have been upheld by the United States Supreme Court in such cases as *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), and *FTC v. Claire Furnace Co.*, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927). Interesting and challenging as are the claims which were presented to the District Court,

the parties to this litigation and this court are required to follow the legal procedures as they have been laid down by Congress and the Supreme Court.

## THE LEGAL ISSUES

The legal questions before us include at least the following:

1) Did the District Judge's "pretrial management order" have the effect of a preliminary injunction so as to make it appealable under 28 U.S.C. § 1292(a)(1) (1976)?

2) If so, should the District Court have dismissed this complaint because appellees have administrative and legal remedies which they are required to pursue and exhaust?

After careful review of this record and the applicable statutes and case law, we conclude that both questions must be answered in the affirmative. We also conclude that these answers are dispositive of this case and require reversal of the District Court's order and dismissal of these complaints.

We emphasize that this court has not reached the merits of appellees' claims. This decision is based purely upon the conclusion that appellees have mistaken their remedies, and all issues (including appellees' constitutional claims) sought to be presented for decision to the District Court can and must under the law be presented first to the FTC and, if rejected, may then be litigated under the applicable statutory provisions in subsequent enforcement proceedings in the Federal District Court prior to presentation to this court.

## I. APPEALABILITY OF THE DISTRICT JUDGE'S ORDER

Plaintiffs in their complaint sought: "An injunction enjoining the Commission, its members, and staff . . . (ii) from enforcing any and all compulsory process which has been issued pursuant to the Resolution; . . . ."

■ The subpoenas at issue in this appeal were originally issued on May 26, 1978, and July 10, 1978. Plaintiffs obtained extensions for compliance until September 18, 1978, from the Commission, but filed their complaint in the instant case seeking both declaratory and injunctive relief on September 11, 1978. By agreement of the parties, the return dates of the subpoenas at issue were extended to November 15, 1978. Prior to that date the FTC filed a motion to dismiss, claiming plaintiffs had an adequate remedy at law and lack of venue.[1] This motion was denied by the District Court and on December 13, 1978, the court issued a pretrial management order extending the returns on the Commission's subpoenas "until further Order of the Court."

The order on its face (and as we believe it was interpreted by the District Judge) intended to stop the Commission's enforcement of its subpoenas for more than 10 days and clearly had that effect. It was issued without findings of fact and without compliance with Rules 52(a) and 65 of the Federal Rules of Civil Procedure. We do not believe that the District Court's characterization of his order as a "pretrial management order" is controlling.[2]

The general rule is: "[A]n interlocutory order that grants . . . an injunction may be broadly defined as an order that temporarily awards . . . a part or all of the permanent injunctive relief sought by a claimant, or that prevents . . . other litigation pendente lite." 9 Moore's Federal Practice ¶ 110.19[1]. The terms, intent, and effect of the order are such as to halt an investigation by an administrative agency for an indefinite period of time. It is also our view that the District Court's order of December 13, 1978, granted a ma-

1. In a memorandum opinion dated November 15, 1978, the District Judge held that venue in the Eastern District of Michigan was proper. The FTC has not appealed this ruling, and, since the defense of improper venue is waivable (Fed.R.Civ.P. 12(h)), we deem the FTC to have waived this claim.

2. The Supreme Court stated in *Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 192, 63 S.Ct. 163, 164, 87 L.Ed. 176, 179 (1942): "The relief afforded by § 129 [a predecessor of § 1292(a)(1)] is not restricted by the terminology used. The statute looks to the substantial effect of the order made."

jor portion of the substantive relief sought by the complaint. For both of these reasons the District Judge's order must be characterized as a preliminary injunction which is appealable under 28 U.S.C. § 1292(a)(1) (1976).[3] *Reed v. Rhodes,* 549 F.2d 1050 (6th Cir. 1976); *International Products Corp. v. Koons,* 325 F.2d 403 (2d Cir. 1963); *Dowling Bros. Distilling Co. v. United States,* 153 F.2d 353 (6th Cir.), *cert. denied sub nom. Gould v. United States,* 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1622 (1946).

> In the *Dowling* case this court said:
> It is only when the power possessed by a court of equity is exercised to stay proceedings in another cause that such action amounts to the grant or refusal of an injunction, . . . .

*Dowling Bros. Distilling Co. v. United States, supra* at 356.

In the *Koons* case the Second Circuit said:

> We think it better, in line with our prior decisions, to continue to read § 1292(a)(1) as relating to injunctions which give or aid in giving some or all of the substantive relief sought by a complaint . . . and not as including restraints or directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial.

*International Products Corp. v. Koons, supra* at 406. (Footnote omitted.)

We hold that this appeal is properly before this court and turn to the substantive issue which it presents.

## II. EXHAUSTION OF ADMINISTRATIVE AND LEGAL REMEDIES

■ As a general rule parties are required to employ the statutorily provided administrative and legal remedies before seeking the general equitable relief which has been sought and granted here. This conclusion is supported by the applicable statutes and case law.

### 1. The Statutory Scheme

■ The Federal Trade Commission Act was adopted by Congress in 1914. 15 U.S.C. §§ 41 *et seq.* In two sections of the Act, Congress gave the Commission broad investigative authority and the power to compel the production of evidence by subpoena.

Section 6(a) describes the Commission's authority to investigate:

**(a) Investigation of persons, partnerships, or corporations**

> To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other persons, partnerships, and corporations.

15 U.S.C. § 46(a) (1976).

Section 9 conveys the Commission's power of access to corporate books and the power of subpoena:

> For the purposes of this subchapter the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any person, partnership, or corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the Commission may sign subpoenas, and members and examiners of the Commission may administer oaths and affirma-

---

**3.** 28 U.S.C. § 1292(a)(1) (1976) provides:

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . .

tions, examine witnesses, and receive evidence.

15 U.S.C. § 49 (1976).

Section 9 also provides for the United States courts to enforce obedience to the Commission's subpoenas:

> Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

> Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation issue an order requiring such person, partnership, or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

> Upon the application of the Attorney General of the United States, at the request of the Commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person, partnership, or corporation to comply with the provisions of this subchapter or any order of the Commission made in pursuance thereof.

*Id.*

Section 9 also authorizes the Commission to take testimony by deposition and to require such witnesses "to . . . produce documentary evidence." *Id.*

In implementing these statutory powers, the FTC has adopted regulations and established procedures which: 1) allow the agency itself to initiate investigations, 16 C.F.R. § 2.1 (1978); 2) require that: "Any person under investigation compelled or requested to furnish information or documentary evidence shall be advised with respect to the purpose and scope of the investigation." 16

C.F.R. § 2.6 (1978); 3) require that an FTC resolution initiating an investigation must "adequately set forth the 'Nature and Scope of Investigation,'" Federal Trade Commission, *Operating Manual* § 3.2 (1978); and 4) provide procedures whereby a "motion to limit or quash any investigational subpoena" can be made before the Commission. 16 C.F.R. § 2.7(b)–(d) (1978).

It is difficult to imagine how Congress could have given an agency greater powers of investigation than the ones described above. This breadth was also made evident in the provisions of the Administrative Procedures Act, 5 U.S.C. §§ 551–559, 701–706 (1976). Section 703 of the Act provides:

> The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute . . . .

It appears that this enactment by Congress serves to emphasize the FTC provisions previously quoted from Section 9 of the Act, which requires FTC enforcement of its subpoenas by proceedings in an appropriate United States District Court where, as we shall see, the parties against whom the proceeding is brought may raise any available defenses.

In addition, Section 706 of the Administrative Procedures Act appears to have narrowed the scope of judicial review by the District and Appellate court by application of the "arbitrary and capricious" standard.

## 2. The Case Law

Despite the apparent breadth of the statutory grant of investigatory power to the FTC which has been relatively unchanged since 1914, courts have not always so enforced it. As we have pointed out at the outset, the United States Supreme Court found the investigation involved in *FTC v. American Tobacco Co., supra,* to have offended against restrictions imposed by the Fourth Amendment to the United States Constitution. However, major case law increases in the administrative agency powers appear to have started in the 1940s. In *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614

(1946), the Supreme Court held that the Fifth Amendment affords no protection against self-incrimination as to either corporations or their officers, and at most, it appears to say that the Fourth Amendment, if applicable, guarded only against abuse by too much indefiniteness or breadth in things required to be statutorily "particularly described":

> As this has taken form in the decisions, the following specific results have been worked out. It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command. This has been ruled most often perhaps in relation to grand jury investigations, but also frequently in respect to general or statistical investigations authorized by Congress. The requirement of "probable cause, supported by oath or affirmation," literally applicable in the case of a warrant, is satisfied in that of an order for production by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in "describing the place to be searched, and the persons or things to be seized," also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.

*Oklahoma Press Publishing Co. v. Walling, supra* at 208–09, 66 S.Ct. at 505–06 (Footnotes omitted).

Of even greater importance is the discussion of Justice Holmes' "fishing expedition" language written by Justice Jackson for a unanimous Court in *United States v. Morton Salt Co., supra*:

> We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan "no fishing expeditions." It must not be forgotten that the administrative process and its agencies are relative newcomers in the field of law and that it has taken and will continue to take experience and trial and error to fit this process into our system of judicature. More recent views have been more tolerant of it than those which underlay many older decisions. Compare *Jones v. Securities & Exchange Comm'n*, 298 U.S. 1, [56 S.Ct. 654, 80 L.Ed. 1015] with *United States v. Morgan*, 307 U.S. 183, 191, [59 S.Ct. 795, 83 L.Ed. 1211].
>
> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*Id.* 338 U.S. at 642–43, 70 S.Ct. at 363–64. Having recognized that the FTC's investigative powers are great, Justice Jackson did acknowledge that there were constitutional limits:

It is unnecessary here to examine the question of whether a corporation is entitled to the protection of the Fourth Amendment. *Cf. Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 [, 66 S.Ct. 494, 90 L.Ed. 614]. Although the "right to be let alone—the most comprehensive of rights and the right most valued by civilized men," Brandeis, J., dissenting in *Olmstead v. United States*, 277 U.S. 438, 471, at 478, [48 S.Ct. 564, 72 L.Ed. 944] is not confined literally to searches and seizures as such, but extends as well to the orderly taking under compulsion of process, *Boyd v. United States*, 116 U.S. 616, [6 S.Ct. 524, 29 L.Ed. 746], *Hale v. Henkel*, 201 U.S. 43, 70 [26 S.Ct. 370, 50 L.Ed. 652], neither incorporated nor unincorporated associations can plead an unqualified right to conduct their affairs in secret. *Hale v. Henkel, supra; United States v. White*, 322 U.S. 694 [64 S.Ct. 1248, 88 L.Ed. 1542].

While they may and should have protection from unlawful demands made in the name of public investigation, *cf. Federal Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298, [44 S.Ct. 336, 68 L.Ed. 696], corporations can claim no equality with individuals in the enjoyment of a right to privacy . . .. Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. *Federal Trade Comm'n v. American Tobacco Co., supra*. But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. "The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208 [, 66 S.Ct. 494, 90 L.Ed. 614].

*Id.* at 651–53, 70 S.Ct. at 368–69.

With these general principles of the applicable law in mind, we turn now to the nature of the remedy available to parties upon whom FTC subpoenas have been served. Early in Supreme Court FTC law the Court decided how the rights of the corporation which had been ordered to submit reports to the Commission could be vindicated. The corporation had (as in our present case) sought and obtained federal court injunctive relief before enforcement proceedings had been commenced. Mr. Chief Justice Taft, writing for the Court, held:

It was intended by Congress in providing this method of enforcing the orders of the Trade Commission to impose upon the Attorney General the duty of examining the scope and propriety of the orders, and of sifting out of the mass of inquiries issued what in his judgment was pertinent and lawful before asking the Court to adjudge forfeitures for failure to give the great amount of information required or to issue a mandamus against those whom the orders affected and who refused to comply. The wide scope and variety of the questions, answers to which are asked in these orders, show the wisdom of requiring the chief law officer of the Government to exercise a sound discretion in designating the inquiries to enforce which he shall feel justified in invoking the action of the court. In a case like this, the exercise of this discretion will greatly relieve the court and may save it much unnecessary labor and discussion. The purpose of Congress in this requirement is plain, and we do not think that the court below should have dispensed with such assistance. Until the Attorney General acts, the defendants can not suffer, and when he does act, they can promptly answer and have full opportunity to contest the legality of any prejudicial proceeding against them. That right being adequate, they were not in a position to ask relief by injunction. The bill should have been dismissed for want of equity.

This conclusion leads to a reversal of the decree of the District Court of Appeals and a remanding of the case to the Supreme Court of the District with direction to dismiss the bill.

*FTC v. Claire Furnace Co.*, 274 U.S. 160, 174–75, 47 S.Ct. 553, 556, 71 L.Ed. 978 (1927).

This case has never been overruled and it appears clearly to mandate the corporation's use of its defenses at any forthcoming FTC enforcement proceeding as its remedy. *See also St. Regis Paper Co. v. United States*, 368 U.S. 208, 225–26, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); *FTC v. Maynard Coal Co.*, 57 App.D.C. 297, 22 F.2d 873 (1927); *Anheuser-Busch, Inc. v. FTC*, 359 F.2d 487, 490–91 (8th Cir. 1966).

Finally, we turn to a much more recent Supreme Court case which deals with the requirement of exhaustion of remedy. In *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459, the Supreme Court held that petitioners who had sought declaratory and injunctive relief in the District Court had an adequate remedy at law and dismissed the complaint for want of equity. In *Reisman*, an internal revenue case, the taxpayers' attorneys sought declaratory and injunctive relief against the Commissioner and the taxpayers' accounting firm which had been issued summonses for taxpayers' books. In *Reisman*, as here, no enforcement proceedings had been started. In this case also the Supreme Court held petitioners had an adequate remedy at law and dismissed the complaint.

The Court's opinion discussed many of the specific arguments of the automobile companies in this present case:

It is urged that the penalties of contempt risked by a refusal to comply with the summonses are so severe that the statutory procedure amounts to a denial of judicial review. The leading cases on this question are *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), and *Oklahoma Operating Co. v. Love*, 252 U.S. 331, [40 S.Ct. 338, 64 L.Ed. 596] (1920). However, we do not believe that this point is well taken here. In *Young* certain railroad rates could be tested only by a failure to comply, which occasioned a risk of both imprisonment and large fines, regardless of the willfulness of the refusal to comply. And in *Oklahoma Operating Co.* the laundry rate fixed by the Oklahoma Corporation Commission could be tested only by contempt with a penalty of $500 per day, each day being a separate violation.

On the other hand, in tax enforcement proceedings the hearing officer has no power of enforcement or right to levy any sanctions. It is true that any person summoned who "neglects to appear or to produce" may be prosecuted under § 7210 [5]

[5] Internal Revenue Code of 1954, § 7210: "Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda, or other papers, as required under sections 6420(e)(2), 6421(f)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records, memoranda, . . .

and is subject to a fine not exceeding $1,000, or imprisonment for not more than a year, or both. However, this statute on its face does not apply where the witness appears and interposes good faith challenges to the summons. It only prescribes punishment where the witness "neglects" either to appear or to produce. We need not pass upon the coverage of this provision in light of the facts here. It is sufficient to say that noncompliance is not subject to prosecution thereunder when the summons is attacked in good faith.

Petitioners also point to § 7604(b) as posing the risk of arrest should the Commissioner proceed under that section for an "attachment * * * as for a contempt." Arguably, such a sanction, even though temporary, might be a penalty severe enough to bring the section within the rationale of *Young, supra*, but we do not so read § 7604(b). This section provides that where "any person summoned * * * neglects or refuses to obey such summons" the Commissioner may proceed before the United States Commissioner or the judge of the District Court "for an attachment against him as for a contempt." Upon a showing of "satisfactory

proof," an attachment for the person so refusing is issued and he is brought before the United States Commissioner or the district judge who proceeds "to a hearing of the case." Upon the hearing the United States Commissioner or the district judge may "make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts * * * ." * * * As we read the legislative history, § 7604(b) remains in this comprehensive procedure provided by Congress to cover only a default or contumacious refusal to honor a summons before a hearing officer. But even in such cases, just as in a criminal prosecution under § 7210, the witness may assert his objections at the hearing before the court which is authorized to make such order as it "shall deem proper." § 7604(b).

*Reisman v. Caplin, supra,* [375 U.S.] at 446–449, 84 S.Ct. at 512–513. (Footnotes, except Footnote 5, omitted.)

The Court concluded by rejecting plaintiffs' other assertions of the inadequacy of the statutory scheme:

Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, *Boren v. Tucker,* [9 Cir.,] 239 F.2d 767, 772–773, as well as that it is protected by the attorney-client privilege, *Sale v. United States,* [8 Cir.,] 228 F.2d 682. In addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene. See *In re Albert Lindley Lee Memorial Hospital, supra,* and *Corbin Deposit Bank v. United States, supra.* And this would be true whether the contempt be of a civil or criminal nature. Cf. *McCrone v. United States,* 307 U.S. 61 [59 S.Ct. 685, 83 L.Ed. 1108] (1939); *Brody v. United States,* [1 Cir.,] 243 F.2d 378. Finally, we hold that such orders are ap-

pealable. See *O'Connor v. O'Connell,* 253 F.2d 365 (C.A. 1st Cir.); *In re Albert Lindley Lee Memorial Hospital, supra; Falsone v. United States, supra; Bouschor v. United States,* 316 F.2d 451 (C.A. 8th Cir.); *Martin v. Chandis Securities Co.,* 128 F.2d 731 (C.A. 9th Cir.); *D. I. Operating Co. v. United States,* 321 F.2d 586 (C.A. 9th Cir.). Contra, *Application of Davis,* 303 F.2d 601 (C.A. 7th Cir.). It follows that with a stay order a witness would suffer no injury while testing the summons.

*Reisman v. Caplin, supra* at 449, 84 S.Ct. at 513.

Although the *Reisman* case is not concerned with the FTC Act, it is impossible for us to distinguish its requirement of exhaustion of statutory remedies in relation to the IRS subpoenas from the same requirement in relation to the FTC subpoenas involved in this case.

In an opinion by Judge (now Justice) Blackmun for the Eighth Circuit, the court held:

We therefore view these corresponding provisions of the Federal Trade Commission Act and of the Internal Revenue Code of 1954 as *in pari materia.* See Handler, Recent Antitrust Developments —1964, 63 Mich.L.Rev. 59, 90–92 (1964).

*Anheuser-Busch, Inc. v. FTC, supra* at 490.

## III. OTHER ISSUES

### 1. The Declaratory Judgment Issue

Plaintiffs' complaint, in addition to seeking injunctive relief against the proposed FTC investigation, also sought a declaratory judgment holding that the FTC Resolution authorizing an investigation violated plaintiffs' Fourth and Fifth Amendment rights and was invalid. The District Judge never reached this issue. No declaratory judgment was issued and, of course, no appeal was taken. Appellees' brief, however, appears to argue for our adjudication of the asserted invalidity of the Resolution on its face. Since, as indicated above, we believe that the District Judge should have dismissed this complaint because of failure to exhaust statutorily provided administra-

tive remedies, we should point out that any deficiencies in the Resolution are also subject to correction in the administrative process.

Plaintiffs allege, for example, that contrary to an FTC Operating Manual rule, the Resolution does not identify the statute's provisions with which the investigation is concerned. Section 3.7(B) of the FTC Operating Manual provides:

(2) The body of the resolution must adequately set forth the "Nature and Scope of Investigation." A mere citation of the statute (e. g., Section 5, Federal Trade Commission Act) does not constitute an adequate statement of the nature and scope of the investigation. The statement may be brief but must be specific to enable a court to determine whether: (a) the investigation is within the authority of the Commission; (b) the material demanded is relevant to the investigation; and (c) the material demanded is reasonable in scope. . . . The statement should also include the charges, the products and geographic area involved.

No effort to secure administrative cure of this alleged defect by filing a motion to quash before the FTC has as yet been made. And, of course, since no enforcement proceedings have been undertaken by the FTC, plaintiffs have not raised this claimed deficiency before the court charged with hearing the enforcement action.

In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (where the Supreme Court authorized direct District Court review because the plaintiff faced immediate penalties), Justice Harlan, writing for the Court, described a two-pronged test:

A further inquiry must, however, be made. The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Laboratories v. Gardner, supra* at 148–49, 87 S.Ct. at 1515 (Footnote omitted.)

Plaintiffs' problem here, of course, is with the second prong of the test, since the FTC procedures outlined above require the Commission to seek sanctions for refusal to comply with its orders in enforcement proceedings in the District Courts.

Finally, we note the applicability to this issue of the policy (laid down in *W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 311–12, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967)) of requiring that constitutional claims be adjudicated in a "factual context."

## 2. The Third Party Subpoenas

Plaintiffs assert that Fourth and Fifth Amendment rights are being threatened by the fact that subpoenas have been directed to third parties for documents in which they claim possessory rights. They also assert that information which is of the nature of trade secrets is contained in some of the records which have been or may be sought.

■ Parties who place documents in channels of commerce in the normal course of business do not normally retain such "expectation of privacy" as to represent a Fourth Amendment interest. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *United States v. Cleveland Trust Co.,* 474 F.2d 1234 (6th Cir.), *cert. denied sub nom. Miceli v. United States,* 414 U.S. 866, 94 S.Ct. 48, 38 L.Ed.2d 118 (1973).

■ Where, as is suggested here, such privacy rights have been retained, the Su-

preme Court has made it clear that those rights may be raised by intervention of the claimant by motion to quash before the FTC or at the enforcement proceeding. *See Reisman v. Caplin, supra,* at 449, 84 S.Ct. 508.

Normally, if there have been measures taken by the one who utters a document to retain privacy rights, the holder of such a document might be expected to give the originating party notice of receipt of a subpoena in time for that party to intervene and file a motion to quash before the Commission.

This record discloses no facts which suggest that we should require the FTC to bear the burden of notifying third parties of its intention to issue subpoenas.

### 3. The Ford Motor Case

■ As indicated at the outset, the FTC Resolution contemplated and resulted in the search for information from all major domestic automobile companies, including Ford Motor Company. Ford, however, did not join in the complaint with which we now deal. On the contrary, we are advised that Ford Motor did proceed to file motions to quash the subpoena issued to it before the FTC.

By motion to supplement the record (which we hereby grant), plaintiffs-appellees in this case advise that the FTC has recently denied the Ford motion to quash and that Ford has filed an action similar to that of plaintiffs herein in the United States District Court for the Eastern District of Michigan. We are, therefore, urged to accept this information as further proof that plaintiffs-appellees have no remedy other than the one presently sought.

In response to the motion to supplement the record, the FTC advises the court that while the FTC did deny the motion to quash, it did so after granting "substantial modifications" of the Ford subpoena which the FTC estimates will cut the Ford compliance burden in half.

Contrary to convincing us that the administrative and statutory judicial remedies

outlined above are inadequate, we feel the Ford result serves to illustrate and helps to justify the requirement of exhaustion of remedies. Plainly, the FTC did listen and act upon Ford's complaints. We have, of course, no way of judging the adequacy of its answer nor of knowing whether our present plaintiffs could present facts which would require a more favorable administrative remedy.

In *Morton Salt,* the Supreme Court pointed out:

> If respondents had objected to the terms of the order, they would have presented or at least offered to present evidence concerning any records required and the costs of their books, matters which now rest on mere assertions in their briefs. The Commission would have had opportunity to disclaim any inadvertent excesses or to justify their demands in the record. We think these respondents could have obtained any reasonable modifications necessary, but, if not, at least could have made a record that would convince us of the measure of their grievance rather than ask us to assume it.

*United States v. Morton Salt Co.,* 338 U.S. 632, 633–34, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

### RECAPITULATION

We hold, for the reasons outlined above, that plaintiffs have administrative and statutory remedies available to them which they must exhaust. They have the right to file motions to quash before the FTC and to file objections before the District Court in any subsequent enforcement proceeding. These motions and objections can be raised in both forums.

The motions and objections referred to above include:
a) claims of constitutional violations;
b) invalidity for lack of specificity of the FTC Resolution;
c) overbreadth and lack of relevance of the subpoenas;
d) excessiveness of cost of compliance; [4]

4. *See SEC v. Arthur Young & Co.,* 190 U.S.App.D.C. 37, 584 F.2d 1018 (1978).

e) any other meritorious defense.

In the event any or all of these claims are rejected at both the Commission and the District Court level, they can be brought again before this court, this time on an evidentiary record which reflects an adversary trial of all disputed issues of fact.

The judgment of the District Court appealed from in this case is reversed and the case is remanded for dismissal of the complaint.