609 F.2d 240
 102 L.R.R.M. (BNA) 2684, 87 Lab.Cas. P 11,621
 BLUE CROSS AND BLUE SHIELD OF MICHIGAN, a non-profit
Michigan Corporation, Plaintiff-Appellee,
v.
NATIONAL LABOR RELATIONS BOARD and John H. Fanning,
Chairman, Howard Jenkins, Jr., John H. Penello, Betty S.
Murphy, John C. Truesdale, Members of the Board, and Bernard
Gottfried, Regional Director for the Seventh Region,
Defendants-Appellants,
v.
TEAMSTERS LOCAL UNION NO. 243, Affiliated with the
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, Intervenor.
 No. 78-1471.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 6, 1979.
Decided Oct. 23, 1979.
 
 Elliott Moore, Mary Schuette, Deputy Associate Gen. Counsel, N. L. R. B., Mary Schuette, Aileen Armstrong, Washington, D. C., Bernard Gottfried, Director Region 7, N. L. R. B., Detroit, Mich., for defendants-appellants.
 Richard Way, Thomas W. H. Barlow, Keywell & Rosenfeld, Troy, Mich., for plaintiff-appellee.
 Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and CECIL, Senior Circuit Judge.
 EDWARDS, Chief Judge.
 
 
 1
 In Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), the United States Supreme Court said:
 
 
 2
 Both parties agree that in the normal course of events Board orders in certification proceedings under § 9(c) are not directly reviewable in the courts. This Court held as long ago as American Federation of Labor v. Labor Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347, that the "final order(s)" made reviewable by §§ 10(e) and (f)[2] in the Courts of Appeals do not include Board decisions in certification proceedings. Such decisions, rather, are normally reviewable only where the dispute concerning the correctness of the certification eventuates in a finding by the Board that an unfair labor practice has been committed as, for example, where an employer refuses to bargain with a certified representative on the ground that the election was held in an inappropriate bargaining unit. In such a case, § 9(d) of the Act makes full provision for judicial review of the underlying certification order by providing that "such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed" in the Court of Appeals.[3]
 
 
 3
 2. Section 10 of the National Labor Relations Act, as amended, 29 U.S.C. § 160, provides in pertinent part:
 
 
 4
 "(e) The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. . . .
 
 
 5
 "(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside."
 
 
 6
 3. Section 9(d) of the National Labor Relations Act, 29 U.S.C. § 159(d), provides in pertinent part:
 
 
 7
 "Whenever an order of the Board made pursuant to section 160(c) . . . is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) . . ., and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript."
 
 
 8
 Boire v. Greyhound Corp., supra at 476-77, 84 S.Ct. at 896. See also Uyeda v. Brooks, 365 F.2d 326 (6th Cir. 1966); Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (6th Cir. 1963).
 
 
 9
 Plaintiff-appellant, Blue Cross and Blue Shield of Michigan, does not, of course, dispute the authority of the Supreme Court language just quoted. Rather, it relies upon two cases, Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and Fay v. Douds, 172 F.2d 720 (2d Cir. 1949). Both of these cases were accepted as authority by the District Judge for her decision in this case. Both of these cases were, however, decided Before Boire and both dealt with quite different fact situations. Since we believe that the United States Supreme Court language quoted above is directly applicable to the fact situation in this case, we hold that the District Judge's decision to exercise jurisdiction was error and we reverse and vacate her orders.
 
 THE FACTS
 
 10
 The Teamsters Union[1] undertook to organize the employees of Blue Cross and Blue Shield of Michigan, to the obvious dissatisfaction of its board and officers. In March of 1978 the union petitioned for a representation election among all the Blue Cross and Blue Shield employees in Michigan (approximately 4,500) and the Board scheduled a hearing for determination of the bargaining unit. In preparation for the hearing, the Board served a subpoena on the company, directing it to bring to the March 28 hearing:
 
 
 11
 1. All job descriptions for classifications presently working or employed at the East Jefferson Street and Lafayette Boulevard premises of BCBSM.
 
 
 12
 2. All manuals, documents or records showing (a) the current wage and salary brackets or levels applicable to job classifications presently working or employed at the East Jefferson and Lafayette Boulevard premises of BCBSM as well as (b) the job classifications, to which each such bracket or level pertains.
 
 
 13
 3. All documents, lists and records showing the names, job classifications, job titles, and departments of all individuals (a) to whom the "Supervisors Newsletter" has been distributed since 1/1/78, (b) who have attended the divisional meetings on the subject of Labor Management and Employee Relations since 1/1/78 and (c) who have been distributed or are listed to be distributed the "list of guidelines for supervisors."
 
 
 14
 4. A copy of the current Supervisor's Manual of Company Policies and Procedures Governing Employees.
 
 
 15
 Subsequently, the company petitioned to revoke the subpoena, contending that it was vague, overbroad, and irrelevant. The Hearing Officer denied the petition and Blue Cross and Blue Shield then declined to furnish the subpoenaed material. Thereupon the Hearing Officer closed the hearing and Blue Cross and Blue Shield asked the Regional Director to grant leave to appeal the closing of the hearing.
 
 
 16
 Subsequent thereto, the Acting Director approved the Hearing Officer's decision to close the hearing, emphasizing that the parties had stipulated before the Hearing Officer to the definition of the appropriate bargaining unit. He then directed holding of the election. Blue Cross and Blue Shield then filed the instant complaint in the United States District Court for the Eastern District of Michigan claiming that the Hearing Officer's closing of the hearing violated its rights to due process of law and seeking to restrain the holding of the election. The District Judge declined to enjoin the holding of the election, finding no threat to Blue Cross and Blue Shield of "irreparable injury." When the election was held, the Teamsters' Union lost. The votes recorded were 1,118 for the union, 1,432 for no union. There were 1,772 challenged ballots approximately 1,600 by the union and 150 by Blue Cross. The union then filed objections to the election, protesting certain actions of Blue Cross. The Regional Director issued a notice of hearing on the objections. Blue Cross and Blue Shield sought review of this action and the NLRB issued an order staying the hearing pending determination of the request for review.
 
 
 17
 Meantime, in the District Court the District Judge issued a written opinion, holding that a postelection hearing was not the equivalent of a preelection hearing, and she had jurisdiction to order the Board under standards enunciated in Leedom v. Kyne, supra, and Fay v. Douds, supra, to hold a "preelection" hearing. It is from this order that the Board has appealed.
 
 
 18
 We have indicated at the beginning of this opinion that we believe that the District Court was in error in exercising jurisdiction in this case. We believe that the following is the clearest statement in this record of her reasoning:
 
 
 19
 The Court is of the opinion that the Hearing conducted by the Hearing Examiner failed to meet the minimal standards of due process, and that the Hearing Examiner's conduct in terminating the Hearing, to which the plaintiff was entitled, because of the plaintiff's failure to comply with a subpoena, where that failure was done in a respectful fashion, a motion to revoke the subpoena was filed, and an immediate application for leave to appeal the Hearing Examiner's denial of the motion to revoke the subpoena was made.
 
 
 20
 As I have stated, then apparently the material to be secured was of sufficient importance that the Hearing Examiner felt it was essential to the proper conclusion of the Hearing and, although there is a statement in the Decision of the Acting Regional Director that the record was sufficient for him to make a decision and direct an election, the substance of his decision causes this Court to conclude that he was not in a position to make a proper decision in view of the record before him and its lack of completeness.
 
 
 21
 As I stated at that time, I was also of the opinion, and still am, that this conduct violated the plaintiff's statutory right to present evidence, as provided in the regulations adopted pursuant to the statute.
 
 
 22
 As I stated then, an alternative was available to the Hearing Examiner. He could have come to the District Court and secured compliance with the subpoena.
 
 
 23
 The position of the plaintiff does not appear to be one that was frivolous, the subpoena as drawn was certainly very broad; and I don't think it is necessary here to determine the question of whether it was overly broad. But were I required to do so I would find that it was and that the Hearing Examiner's decision was clearly erroneous in saying that it had to be complied with in its entirety in the form in which it was served.
 
 
 24
 Thus, I think that this case, insofar as these two aspects are concerned, is one which, under the doctrine of Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 and Fay v. Douds, 172 F.2d 720 (C.A.2, 1949) the District Court does have jurisdiction to issue an injunction if plaintiff can meet the requirement of any injunction of showing irreparable harm this is particularly true of any injunction, but particularly it is necessary here in view of the statutory provision that the Section 9 Administrative Hearings are not subject to review in the District Court, statutory prohibition review under the Administrative Procedures Act.
 
 
 25
 Transcript of May 8, 1978, at 67-69, BCBSM v. NLRB, No. 78-1471 (E.D.Mich.1978).
 
 
 26
 Although the District Judge found "no irreparable harm" and allowed the election to be held, subsequent thereto she ordered that the "preelection" hearing which she had found constitutionally inadequate on due process grounds be reopened.
 
 
 27
 We believe that Leedom v. Kyne, supra, is not authority in this case for avoidance of the statutory requirement that National Labor Relations Board proceedings be reviewed by the Court of Appeals after "final order" by the Board. While the statute itself does provide for "an appropriate hearing," Section 9(c)(1), (29 U.S.C. § 159(c)(1) (1976)), the National Labor Relations Act does not spell out any particular requirements for either the preelection hearing or the postelection hearing. Contrary to the situation in Leedom v. Kyne, we find no Board action "in excess of its delegated powers" or "contrary to a specific prohibition in the Act." The N.L.R.A. does, of course, make the findings of fact by the Hearing Officer, the Regional Director and the Board fully reviewable by the Court of Appeals after any final Board bargaining order. The logic of this system of review was spelled out in Congressional debate by Senator Robert A. Taft during Taft-Hartley debate:
 
 
 28
 "Subsection 9(d) of the conference agreement conforms to the Senate amendment. The House bill contained a provision which would have permitted judicial review of certifications even before the entry of an unfair labor practice order. In receding on their insistence on this portion, the House yielded to the view of the Senate conferees that such provision would permit dilatory tactics in representation proceedings."
 
 
 29
 93 Cong.Rec. 6444.
 
 
 30
 The importance of this logic is fully illustrated by this case. The petition for election was filed March 7, 1978. The District Judge's final order was entered June 26, 1978. The final brief was filed before this court January 23, 1979. The case was Advanced for argument to the June 1979 term of this court. The opinion will appear in the month of October, 1979. Assuming appellees file a petition for writ of certiorari to the United States Supreme Court, the probability of a delay of at least two years in disposing of this case directly resulting from the District Court proceeding will be very high. While such delay in federal litigation is by no means unusual, it was obviously Congress' intention to seek to avoid it in union representation proceedings by making only final Section 10 orders appealable.
 
 
 31
 We emphasize that neither the National Labor Relations Act itself, nor any authoritative legislative history, nor Leedom v. Kyne, supra, nor any other Supreme Court decision, either commands or authorizes the delay inherent in District Court review of interlocutory orders of the Board or its agents.
 
 
 32
 In Boire v. Greyhound Corp., supra, the Supreme Court said:
 
 
 33
 And both the House[5] and the Senate Reports[6] spelled out the thesis, repeated on the floor, that the purpose of § 9(d) was to provide "for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election."[7] Congressional determination to restrict judicial review in such situations was reaffirmed in 1947, at the time that the Taft-Hartley amendments were under consideration, when a conference committee rejected a House amendment which would have permitted any interested person to obtain review immediately after a certification[8] because, as Senator Taft noted, "such provision would permit dilatory tactics in representation proceedings."[9]
 
 
 34
 5. ". . . Section 9(d) of the bill makes clear that there is to be no court review prior to the holding of the election, and provides an exclusive, complete, and adequate remedy whenever an order of the Board made pursuant to section 10(c) is based in whole or in part upon facts certified following an election or other investigation pursuant to section 9(c). The hearing required to be held in any such investigation provides an appropriate safeguard and opportunity to be heard. Since the certification and the record of the investigation are required to be included in the transcript of the entire record filed pursuant to section 10(e) or (f), the Board's actions and determinations of fact and law in regard thereto will be subject to the same court review as is provided for its other determinations under sections 10(b) and 10(c)." H.R.Rep.No.972, 74th Cong., 1st Sess., 20-21.
 
 
 35
 6. "Section 9(d) makes it absolutely clear that there shall be no right to court review anterior to the holding of an election. An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees. There is no more reason for court review prior to an election than for court review prior to a hearing. But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by any aggrieved party in the Federal courts in the manner provided in section 10. And this review would include within its scope the action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board." S.Rep.No.573, 74th Cong., 1st Sess., 14.
 
 
 36
 7. 79 Cong.Rec. 7658.
 
 
 37
 8. See H.R.Rep.No.245, 80th Cong., 1st Sess., 43; H.Rep.No.510, 80th Cong., 1st Sess., 56-57, U.S.Code Cong.Serv.1947, p. 1135.
 
 
 38
 9. 93 Cong.Rec. 6444.
 
 
 39
 Boire v. Greyhound Corp., supra at 478-79, 84 S.Ct. at 897-898.
 
 
 40
 The District Judge's reliance upon Fay v. Douds, 172 F.2d 720 (2d Cir. 1949), is another matter. We recognize that Judge Learned Hand's opinion can be read as nullifying the expressed Congressional intent as to any due process claim which was not "transparently frivolous." Id. at 723. Reliance upon Fay v. Douds, supra, is however, inappropriate. This case rejected all relief sought by plaintiff thereby reaching the same result as if the District Judge had refused to exercise jurisdiction at all. In dictum, however, the Second Circuit's opinion implied that the District Court could intervene in any instance, either before or after election, where the Board or its agents "plausibly" offended due process standards. See Id. at 723.
 
 
 41
 This dictum has never been approved by the United States Supreme Court or by this court.[2] It is in clear violation of both the expressed Congressional purpose and the principle of exhaustion of administrative remedies.[3]
 
 
 42
 As previously stated in this report, the efficacy of Public Resolution 44 has been substantially impaired by the provision for court review of election orders prior to the holding of the election. Section 9(d) of the bill makes clear that there is to be no court review prior to the holding of the election, and provides an exclusive, complete, and adequate remedy whenever an order of the Board made pursuant to section 10(c) is based in whole or in part upon fact certified following an election or other investigation pursuant to section 9(c). The hearing required to be held in any such investigation provides an appropriate safeguard and opportunity to be heard. Since the certification and the record of the investigation are required to be included in the transcript of the entire record filed pursuant to section 10(e) or (f), the Board's actions and determinations of fact and law in regard thereto will be subject to the same court review as is provided for its other determinations under sections 10(b) and 10(c).
 
 
 43
 H.R.Rep.No.1147, 74th Cong., 1st Sess., 23.
 
 
 44
 In this case administrative remedies had not nearly been exhausted. In American Motors v. FTC, 601 F.2d 1329 (6th Cir. 1979) (No. 79-1048, decided July 2, 1979), this court reviewed a line of Supreme Court decisions concerning whether statutorily-created administrative and legal remedies could be eschewed, in favor of immediate review by the Federal District Courts, where a party presents a claim of Constitutional violations. We concluded that "(a)s a general rule parties are required to employ the statutorily provided administrative and legal remedies before seeking . . . general equitable relief." American Motors v. FTC, supra, at 1332.
 
 
 45
 Here, Blue Cross has both administrative and legal remedies to pursue. The clear mandate of the National Labor Relations Act in this regard was set forth in Boire, supra. Blue Cross will have the opportunity to raise its objections in the challenged-ballot proceeding, as both the Acting Regional Director and the District Court (at least initially) recognized. If the union is ultimately certified as the employees' bargaining representative, Blue Cross may refuse to bargain and again assert its claims before the Board in an unfair labor practice proceeding. Review of the Board's decision in that event will clearly be available in the Court of Appeals. There will be ample opportunity for review of Blue Cross' claims in accord with the scheme of the Act.[4]
 
 
 46
 The Regional Director had ordered a postelection hearing on challenged ballots. If that postelection hearing had been allowed to be held, it might well have served to cure any arguable due process failures.[5] In addition, since the Teamsters lost the election by 314 votes, the postelection hearing might well have terminated all of Blue Cross and Blue Shield's concerns and this litigation.
 
 
 47
 The judgment of the District Court is vacated and the case is remanded to the District Court for dismissal of the complaint.
 
 
 
 [1]
 Teamsters Local Union No. 243, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America
 
 
 [2]
 It is, in fact, questionable whether the Second Circuit, which decided Fay v. Douds would now accept it as controlling. Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129, 134 (2d Cir.), Cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967). See also Herald Co. v. Vincent, 392 F.2d 354, 359 (2d Cir. 1968)
 
 
 [3]
 See Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)
 
 
 [4]
 In this regard, we recognize that the Court in Kyne "noted that unless the District Court had jurisdiction, the employees might never secure review of the Board's error." Briscoe v. Bell, 432 U.S. 404, 413 n. 13, 97 S.Ct. 2428, 2433 n. 13, 53 L.Ed.2d 439 (1977). This fact lends further support to our conclusion that the Kyne exception does not apply in the instant case
 
 
 [5]
 We do not pass on the District Judge's characterization of the preelection hearing as violative of due process, since the only issue we need to reach is her exercise of jurisdiction. For the same reason, we do not decide whether or not it is possible to hold a "pre-election hearing" as the District Judge ordered without first vacating the election already held